CRESCENT WHARF & WAREHOUSE, Appellant,

v.

COMPANIA NAVIERA DE BAJA CALIF., Appellee.

COMPANIA NAVIERA DE BAJA CALIFORNIA, Appellant,

v.

Bernard NORIEGA, Appellee.

No. 20193.

United States Court of Appeals Ninth Circuit.

Sept. 16, 1966.

Robert Sikes, Sikes, Pinney & Matthew, Los Angeles, Cal., for appellant Crescent Wharf etc.

Dan Brennan, Jerome O. Hughey, Overton, Lyman & Prince, Los Angeles, Cal., for appellant Compania Naviera De Baja Calif., S.A.

Newton R. Brown, Wilmington, Cal., Wm. B. Murrish, Ben Margolis, Margolis & McTernan, Los Angeles, Cal., for appellee.

Before BARNES and KOELSCH, Circuit Judges, and TAYLOR, District Judge.

FRED M. TAYLOR, District Judge:

This action was brought by appellee Bernard A. Noriega (Noriega) against

appellant Compania Naviera De Baja California, S.A., a corporation, (Compania) for personal injuries received while working as a stevedore on a vessel owned by said appellant. At the time of his injury on April 18, 1963, Noriega was an employee of appellant-third party defendant, Crescent Wharf & Warehouse Company, a corporation, (Crescent) on board the vessel "San Luciano". Compania filed a third party complaint against Crescent alleging that Crescent was negligent and breached its warranty of workmanlike service and sought indemnification for any liability it might have to Noriega. Crescent answered the third party complaint and as a special defense claimed that Compania failed to use ordinary care to provide a vessel, gear and equipment in such condition that Crescent would be able to load the vessel with reasonable safety. The case was tried to the court, without a jury, and the court awarded judgment in favor of plaintiff Noriega against Compania and a judgment in favor of Compania against Crescent on Compania's claim for indemnity. Both Compania and Crescent have appealed.

The following is a résumé of the facts as shown by the undisputed evidence. On April 18, 1963, Noriega and other employees of Crescent were on board the "San Luciano", a Mexican freighter, for the purpose of loading pallets of bricks into the starboard side of No. 3 lower hold, known as the No. 3 starboard deep tank. The shaft into which the pallets of bricks had to be lowered to reach the bottom of the hold was very narrow and confined. Because of the location of a shaft alley the rigging had to be manipulated so as to miss this obstruction. Crescent had worked the ship on several previous occasions. The hold had at one time been divided into a 'tween deck and a lower hold by means of strongbacks. The 'tween deck hatchcoaming was affixed with strongback slots which had formerly supported the strongbacks. The strongback slots were composed of double flanges, a flange on either side of the slot.

The hatch boss for Crescent, a Mr. Hansen, knew they were there and he testified that they did not appear to be in any different condition than they had been on prior occasions. Before the work of loading commenced, the flanges were flush against the coaming and on inspection by the hatch boss appeared to be secure. Soon after the loading operation commenced three or four loads of brick, each weighing about 2100 pounds, hung up or caught on the flanges which created a strongback slot and this caused one of the flanges to become bent out from the coaming. Bricks fell from the pallets when the loads hung up on the flange. As a result of the loads hanging up, the hatch boss stopped the loading operation and reported the problem to the first mate of the vessel and requested that the situation be corrected. Members of the crew then proceeded to hammer the flange back against the coaming with a sledge hammer. Prior to resuming the operation of loading, the hatch boss made a personal inspection of the repaired flange and ascertained that it looked perfect and that the weld and bolts securing it to the coaming had not been broken. He also determined that the flange had been placed back against the coaming in the same condition as it had been when the work had commenced that morning. The hatch boss testified that the flange looked perfect to him but that he did not physically take hold of the flange and attempt to move it in any fashion because it was welded and bolted. The bolts extended out from the flange an estimated distance of one-half to one inch. The hatch boss concluded that since the flange was back flush against the coaming the loads could not hang up anymore. After such inspection, the loading was resumed and continued for approximately thirty minutes without incident until a load caused a portion of the flange to break off and fall into the hold below, striking and injuring the plaintiff. The evidence reveals that prior to the flange being bent out and thereafter until the time of the accident, some portion or portions of the rigging struck and rubbed against the flange.

On this appeal Compania contends that the trial court erred in the making of certain Findings of Fact and Conclusions of Law and in particular Findings of Fact Nos. 3, 4 and 5, Supplemental Finding of Fact No. 11, Conclusion of Law No. 2 and Supplemental Conclusions of Law Nos. 2 and 3.[1] Compania argues that the court erred in that portion of Finding of Fact No. 3 which states: " * * * said metal flange * * * at the time of the accident was protruding into the working area * *", except insofar as the court was describing the condition which existed at the moment of the accident. It is claimed that the court erred in Findings of Fact Nos. 4 and 5, Supplemental Finding of Fact No. 11, Conclusion of Law No. 2 and Supplemental Conclusions of Law Nos. 2 and 3 by failing to find and conclude that the unseaworthiness of the "San Luciano" was instantaneous with plaintiff's injuries. Said appellant claims that the court erred in that portion of Conclusion of Law No. 3 which states: "plaintiff is entitled to a decree against the defendant Compania Naviera De Baja California, S.A., * * *." Compania contends that part of.Finding No. 3 to the effect that the flange "at the time of the accident was protruding into the working area which was narrow and confined" and Finding No. 4 that by reason thereof the vessel "was in unseaworthy condition" are not supported by the evidence. Also, that they are in conflict with Supplemental Finding No. 8 which states in part that "on completion of the pounding referred to above, the flange was then against the coaming and in the identical position it had been in at the commencement of said loading operation".[2] It is appellant's position that the finding in

---

1. Finding No. 3. "That on or about April 18, 1963, plaintiff Bernard A. Noriega was working as a holdman in the Number 3 Hatch starboard inshore deep tank, and while working was struck on the head by a metal flange which became dislodged during the loading operation, said metal flange, a permanent part of the ship's equipment which at the time of the accident was protruding into the working area which was narrow and confined."

Finding No. 4. "That by reason of said flange protruding into said working area, the SS San Luciano was in an unseaworthy condition."

Finding No. 5. "That as a result of said unseaworthy condition, plaintiff sustained head and neck injury, which have been, now are & will be disabeling [sic] for a period of 2 years."

Supplemental Finding No. 11. "CRESCENT was negligent and breached its duty to render its stevedoring services in a workmanlike manner by causing or permitting the loading gear to strike or catch on said flange, and by failing to properly supervise the loading operations and by failing to conduct the loading in such a manner as to avoid unnecessary risks to the plaintiff. CRESCENT'S negligence and breach of warranty caused the unseaworthiness of the S.S. "SAN LUCIANO" and were the proximate cause of injury to plaintiff, BERNARD A. NORIEGA."

Conclusion No. 2. "At all times referred to in the complaint, the SS San Lusiano [sic] was unseaworthy; as a direct and proximate result of the unseaworthiness plaintiff sustained injuries and damages therefrom in the total amount of $15,000.00 general damages and the sum of $35,516.90, special damages for loss of wages and medical expense."

Supplemental Conclusion No. 2. "The S.S. 'SAN LUCIANO' was rendered unseaworthy by reason of the negligence of CRESCENT."

Supplemental Conclusion No. 3. "CRESCENT was negligent and breached its warranty of workmanlike performance in the manner in which it loaded cargo aboard the S.S. 'SAN LUCIANO' rendering the S.S. 'SAN LUCIANO' unseaworthy."

2. Supplemental Finding No. 8. "On completion of the pounding referred to above, the flange was then flush against the coaming and in the identical position it had been in at the commencement of said loading operations. Thereafter the hatch tender who was employed by CRESCENT to guide the pallet loads into said hold recommenced loading operations into said hold. Shortly thereafter, and while said hatch tender was directing a pallet load of bricks into said hold, the loading gear struck or caught said flange causing a part of it to break off and fall and strike plaintiff, BERNARD A. NORIEGA, on the head, causing him the injuries set forth in the Findings of Fact and Conclusions of Law in Bernard A. Noriega

Supplemental Finding No. 8 that before the accident the flange was flush against the coaming is to be construed to mean that it was not protruding into the working area as found in Finding No. 3. We do not agree. The evidence reveals that the flange, although flush against the coaming, still protruded into the hatch area by its own thickness in that it was fastened to the hatchcoaming and not inlaid therein. It is clear from the evidence that the flange was at all .times protruding into the hatch area at least to the extent of its thickness and was being struck or rubbed against by the gear and rigging used in lowering the pallets of brick which created the unseaworthy danger when the method of loading by Crescent was employed. Also in Supplemental Finding No. 8, the court found that the accident happened when "the loading gear struck or caught said flange causing a part of it to break off and fall and strike plaintiff." This is not in conflict with the finding in Finding No. 3 that the flange was protruding into the hatch opening at the time of the accident. The findings are supported by the evidence and are not clearly erroneous. It is well settled that findings of fact shall not be set aside unless clearly erroneous. F.R.Civ.P. 52(a) [3].

■ It is clear that the two flanges had no useful function and were located on the coaming of the narrow 'tween deck hatch and were, by their location, subject to being struck, rubbed over or caught by the gear and rigging lowering the pallet loads. This was a continuing danger and a constant condition of unseaworthiness. When the loading first commenced the dangerous condition existed and it continued to exist after the flange was pounded back against the coaming.

In light of what we have heretofore said it follows that the instant unseaworthiness doctrine, urged by appellant, as enunciated in Beeler v. Alaska Aggregate Corp., 336 F.2d 108 (9 Cir. 1964); Titus v. The Santorini, 258 F.2d 352 (9 Cir. 1958); and, Billeci v. United States, 298 F.2d 703 (9 Cir. 1962) is not applicable under the facts of this case.

Since we find that the trial court's Findings of Fact and Conclusions are supported by the evidence, we affirm the judgment against appellant Compania.

We shall next consider Crescent's appeal. This appellant-third party defendant urges that the court erred in finding that the Stevedore Company (Crescent) negligently allowed the gear to strike a metal flange on the vessel (Supplemental Finding No. 5) [4]; that the court erred in finding that the loading gear struck or caught the flange causing a part of it to break off and strike the plaintiff (Footnote 2); that the court erred in finding that the Stevedore Company was negligent and had breached its duty to do its stevedoring services in a workmanlike manner by causing or permitting the loading gear to strike or catch on the said flange and by failing to conduct the loading in such a manner as to avoid unnecessary risks to the plaintiff, and that such negligence and breach of warranty caused the unseaworthiness of the vessel and

v. Compania Naviera De Baja California, S.A."

3. "In reviewing a judgment of a trial court, sitting without a jury in admiralty, the Court of Appeals may not set aside the judgment below unless it is clearly erroneous. No greater scope of review is exercised by the appellate tribunals in admiralty cases than they exercise under Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A." McAllister v. United States, 348 U.S. 19, 20, 75 S.Ct. 6, 8, 99 L.Ed. 20.

4. Supplemental Finding No. 5. "On April 18, 1963, CRESCENT, while engaged in loading pallets of bricks, negligently allowed the pallet or pallet bridle gear to catch or strike a metal flange on the hatch coaming of No. 3 lower hold, causing same to bend outward toward the center of the square of the hatch, creating a danger of severing the flange which would allow the same to fall and strike longshoremen below and creating the danger of spilling the palletized load of bricks."

Supplemental Finding No. 8. Refer to Footnote 2.

Supplemental Finding No. 11. Refer to Footnote 1.

were the proximate causes of the injury to the plaintiff (Supplemental Finding No. 11, Footnote 1); and, that the court erred in finding in effect that it was not true that the shipowner Compania breached its obligations to the Stevedore Company to have the vessel and its gear and equipment in such a condition that the Stevedore Company by the use of ordinary care would be able to load the vessel with reasonable safety (Supplemental Finding No. 11, Footnote 1).

■ This appellant contends that the burden of proof on the indemnity claim contained in the third party complaint is on the shipowner Compania. Crescent maintains that the record is completely void of any evidence indicating that the loading of this vessel could have been accomplished by any other method or means than that employed by it. It is true that there is no evidence in the record to indicate that under the conditions then existing the loading could have been done other than in the manner it was done by Crescent. Albeit, the record is clear that after the loads started to hang up on the flange, and at the time the work was stopped by the hatch boss, there existed a danger. This danger was clearly known to the hatch boss for Crescent.[5] It is obvious that after the flange was hammered back by the crew of Compania, the same dangerous condition existed at the beginning and thereafter until the work was stopped by the hatch boss. If, as contended by Crescent, there was no other method or means of loading the vessel than the one employed, then we do not believe Crescent was justified in carrying on a loading operation which it knew to be dangerous. It was aware of

the possibility of a flange being pulled loose. The procedures of loading prior to the time the flange was hammered back and subsequent thereto were not changed. The loading gear still continued to catch or strike the metal flange the same as it had prior to the stoppage of work. There was no attempt to avoid the known danger by the use of another method or stopping the work until it could be definitely determined that there was no danger from the catching and rubbing of the gear on the flange.[6]

The trial court found that Crescent negligently allowed the pallets or pallet bridle gear to catch or strike the metal flange on the hatchcoaming of No. 3 lower hold, causing same to bend outward toward the center of the square of the hatch, creating a danger of severing the flange which would allow the same to fall and strike longshoremen below and creating the danger of spilling the palletized load of bricks (Footnote 4).

The court also found that Crescent was negligent and breached its duty to render its stevedoring services in a workmanlike manner by causing or permitting the loading gear to strike or catch on said flange, and by failing to properly supervise the loading operations and by failing to conduct the loading in such a manner as to avoid unnecessary risks to the plaintiff. The court then found that Crescent's negligence and breach of warranty caused the unseaworthiness of the "San Luciano" and were the proximate cause of the injury to the plaintiff (Supplemental Finding No. 11, Footnote 1).

■■ We believe there is substantial evidence to support these findings and that they are not clearly erroneous. If

---

5. Testimony of hatch boss Hansen.

"Q Then were you the one who gave the orders to stop work?

A I gave the orders to stop working, and at the same time the men drew my attention to the danger that something would carry away. So I realized the danger and I stopped the work.

Q And the danger that you are talking about was the possibility that the flange would pull loose?

A It was, sir." Tr. p. 58.

6. In Misurella v. Isthmian Lines, Inc., 328 F.2d 40, 42 (2d Cir. 1964) the Court said:

"In any event, we should find insuperable difficulty to any holding that the owner here prevented or hindered a workmanlike performance by the stevedore, for the stevedore could itself have provided workable ventilating equipment as was often done where a ship failed to do so, or shut down the hi-los until the deck house key was produced."

Crescent rendered a substandard performance which led to foreseeable liability of Compania, the latter was entitled to indemnity absent conduct on its part to preclude recovery. Weyerhaeuser Steamship Co. v. Nacirema Operating Co., 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491.

Crescent argues that the actions of Compania, as the shipowner, precluded recovery on its claim for indemnification. Crescent urges, and we agree, that a shipowner is charged with placing its vessel in such a condition as to permit a stevedoring company to be able to load cargo with reasonable safety by the use of ordinary care. See Hugev v. Dampskisaktieselskabet International, D.C., 170 F.Supp. 601, aff'd as Metropolitan Steve. Co. v. Dampskisaktieselskabet Int., 274 F.2d 875 (9 Cir. 1960). In this respect, Crescent argues that Compania had complete charge of the repairs to the flange and that the subsequent breaking of the flange and the accident was not caused by any fault on its part. The trial court found from the evidence that:

> "9. CRESCENT, in recommencing loading operations after said repair of the flange, did not rely upon any statement or representation of the ship's crew as to the condition of the flange but in fact relied upon its own observation and inspection."

The evidence reveals that after the repair of the flange was made by hammering it back, appellant Crescent continued working in the same manner as before and that its rigging continued to rub or strike against the flange. Crescent's hatch boss merely viewed the flange after it was hammered back but did not physically inspect it so as to determine whether it was reasonably safe to continue loading in the same manner as it had done prior thereto. As Crescent argues, it may be correct to say that Crescent's chief concern was whether the pallet would hang up again and the bricks fall. It is apparent, however, that the presence of the flange created a known hazard. Assuming that Compania's actions constituted a breach of its contractual obligation, the evidence here justifies a finding of a waiver of said breach. See Metropolitan Steve. Co. v. Dampskisaktieselskabet Int., supra.

According to the undisputed evidence, we are unable to and do not find that the trial court erred in awarding a judgment in behalf of Compania against Crescent for indemnity.

Affirmed.