**ALASKA STEAMSHIP COMPANY, a corporation, and SS TONSINA, her tackle, engines, and appurtenances, Appellants,**

v.

**Arnold H. GARCIA, Appellee.**

**No. 20823.**

United States Court of Appeals Ninth Circuit.

April 18, 1967.

Thomas J. McKey, Bogle, Gates, Dobrin, Wakefield & Long, Seattle, Wash., for appellants.

Milton H. Soriano, Soriano & Soriano, Seattle, Wash., for appellee.

Before CHAMBERS, HAMLEY and MERRILL, Circuit Judges.

HAMLEY, Circuit Judge:

Arnold H. Garcia brought this libel *in rem* against Alaska Steamship Company (Company), and the SS TONSINA to recover damages for personal injuries sustained while serving as a longshoreman aboard the vessel. The Company was both the owner of the vessel and the

employer of Garcia. The trial court entered a decree in favor of Garcia. The Company appeals.

Garcia and other members of his "gang" of longshoremen boarded the SS TONSINA at pierside in Seattle, preparatory to loading cargo from the port side. The vessel's boom at No. 3 hatch was to be used for this purpose. The boom, however, and a guy line leading from the rail of the ship to the upper end of the boom, had been improperly rigged for the portside cargo loading operation. Because of this faulty rigging, the boom topped (swung into an upright position) while Garcia and his fellow longshoremen were using the boom to lift a heavy piece of cargo from the dock. The topping of the boom caused the topping lift cable to slacken.

No one was injured as the boom swung into an upright position and the topping lift cable slackened. The result, however, was that the boom and topping lift cable were left in dangerous positions, due to the possibility that the boom might fall.

Garcia and the other members of his longshoremen's gang were called upon to remedy the defective condition by lowering the boom. In an effort to do so, Lewis B. Wirth, foreman of the gang and also employed by the Company, ordered other longshoremen to release the improperly placed guy line. The order was obeyed by longshoremen other than Garcia. As the boom fell, the topping lift cable became taut, and the taut line caught Garcia and pinned him to the masthouse at No. 3 hatch, injuring Garcia.

■ Appellants seek reversal of the decree against them upon the ground that section 5 of the Longshoremen's and Harbor Workers' Compensation Act, 44 Stat. 1426 (1927), 33 U.S.C. § 905 (1964) immunizes the Company, as the stevedore employer, from personal liability for Garcia's injuries, notwithstanding the fact that the Company was also the owner of the vessel, and thus ordinarily personally liable under the doctrine of unseaworthiness. There being no personal liability, appellants contend, an *in rem* libel against the vessel may not be maintained.

This precise contention has twice been rejected in recent decisions of this court. See Pacific Inland Navigation Company v. Course, 9 Cir., 368 F.2d 540; Grace Line, Inc. and S.S. SANTA JUANA v. Kanton, 9 Cir., 366 F.2d 510. We adhere to the holdings in those cases.

Appellants urge reversal upon the additional ground that the proximate cause of Garcia's injuries was not the upright position of the boom which resulted from the improperly rigged boom and guy line. Rather, they contend, the proximate cause of Garcia's injuries was the negligent effort by members of the longshoremen's gang to correct this unseaworthy condition. Appellants therefore assert that since the trial court dismissed Garcia's negligence count on the ground that appellants had a valid "fellow-servant negligence" defense, no liability attaches to the appellants.

■ Appellants do not deny that the upright position of the boom, with its slack topping lift cable, together with the improper rigging described above, rendered the SS TONSINA unseaworthy. They point out, however, that the boom and guy line remained in their precarious positions for a period of from twelve to twenty-four minutes, and during this period Garcia was not injured. They urge that the cause of Garcia's injuries was the negligence of other longshoremen in releasing the guy line so as to cause the boom to fall, and in doing so while Garcia was in a position of danger.

Appellants defend upon the ground that it was this intervening negligence of fellow-servants which caused Garcia's injuries, and not a continuing unseaworthy condition of the SS TONSINA.[1]

1. According to appellants, the proper procedure would have been to take the slack out of the topping lift cable before releasing the guy line, so the boom could be lowered gently by the topping lift cable and would not be allowed to fall.

It is not denied that the SS TONSINA was rendered unseaworthy by reason of the improperly rigged boom and attached guy line. This unseaworthiness was enhanced when, by reason of such improper rigging, the boom swung into an upright position, leaving a slack topping lift cable. The danger resulting from such unseaworthiness continued until the boom could be safely lowered or rerigged.

The liability of the shipowner arising from this unseaworthy condition therefore continued until such correction could be made and, in our opinion, embraced any method or act employed in correcting the dangerous condition. Garcia was injured because the risk that the boom might fall materialized. This being the case, it is without legal significance that the unseaworthy condition might have been corrected in a manner which would have prevented the boom from falling.

■ Appellants point out that Garcia's injuries occurred as a direct result of, and within a few moments of the assertedly negligent release of the guy line attached to the boom. Because of this, appellants ask us to apply the so-called doctrine of "instant unseaworthiness." Under this doctrine, liability does not attach on the ground of unseaworthiness if the injury was sustained by the negligent use of a seaworthy appliance at the very moment of injury. This court adheres to that doctrine.[2]

The concept of "instant unseaworthiness" has been criticized as being inconsistent with the Supreme Court's pronouncements that the warranty of seaworthiness in personal injury cases imposes an absolute and continuing duty on the shipowner.[3] It also seems to be somewhat at odds with the doctrinal trend of recent Supreme Court decisions[4] and with the more particular rule, referred to above, that unseaworthiness may result from the improper use of nondefective appliances. These considerations lead us to proceed with caution when we are asked to apply that doctrine *under circumstances not readily identified with prior decisions.*[5]

■■ The "instant unseaworthiness" concept is predicated upon the negligent

---

2. See Beeler v. Alaska Aggregate Corporation, 9 Cir., 336 F.2d 108, 109–110; Billeci v. United States, 9 Cir., 298 F.2d 703, 706; Titus v. THE SANTORINI, 9 Cir., 258 F.2d 352, 354.

3. Norris, MARITIME PERSONAL INJURIES 85 (1959). See Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099; Mahnich v. Southern Steamship Co., 321 U.S. 96, 64 S.Ct. 455, 88 L.Ed. 561.

4. Somewhat the same view was expressed by this court in Huff v. Matson Navigation Company, 9 Cir., 338 F.2d 205, 216, in dealing with an argument tending to circumscribe, in another respect, the doctrine of unseaworthiness as applied to longshoremen.

   "As stated by the Fourth Circuit in Scott v. Isbrandtsen, 327 F.2d 113, 124 (1964): 'The obvious trend of the Supreme Court decisions is toward providing ever increasing protection for crewmen, longshoremen and even others employed by independent contractors who may be called upon to work aboard vessels.' This trend can be noted by examining numerous recent cases,[13] and we do not choose to challenge that trend in this decision." (Footnote omitted.)

5. This general attitude concerning application of the concept of "instant unseaworthiness" is exemplified by the following language from our decision in Blassingill v. Waterman Steamship Corporation, 9 Cir., 336 F.2d 367:

   "This is not a case of 'instant unseaworthiness,' such as we referred to in Titus v. The Santorini, 9 Cir., 1958, 258 F.2d 352, 354, and Billeci v. United States, 9 Cir., 1962, 298 F.2d 703, 706. General language in those cases and others indicating that the shipowner is not liable for unseaworthiness brought about by action of the stevedore must be confined to the facts of the cases in which it is used. Thus Blassingill might fail in this case if the only danger was brought about by himself or his fellow longshoremen in not properly placing bales in the particular slingload that injured him. The evidence, however, does not require a finding that that is what happened. Here, the jury could have found that there was adopted by the stevedore a course of conduct that made the ship dangerous. This, we think, is unseaworthiness." (336 F.2d at 370)

use of ship's gear where there is no pre-existing unseaworthy condition. This is not the case here. The dangerous position of the boom in question had already rendered the vessel unseaworthy. Moreover, it was that unseaworthy condition which necessitated the repositioning of the boom and, as noted above, was the specific danger, the realization of which eventually led to Garcia's injuries. We are unwilling to relieve a shipowner of liability by extending the "instant unseaworthiness" doctrine to include a case involving these unusual circumstances.[6]

Affirmed.

6. A somewhat analogous situation arose in this circuit in Thorson v. Inland Navigation Company, 9 Cir., 270 F.2d 432, 77 A. L.R.2d 825. In that case the unseaworthy condition which caused a longshoreman's injury was held to arise as much from an improperly placed piece of ship equipment as from the possible negligent acts of fellow longshoremen. We there held that the owner's duty to make the vessel seaworthy extended to those aspects of unseaworthiness which are brought about by acts of a stevedore company or its servants. Cf. THE TAMPICO, D.C.W. D.N.Y., 45 F.Supp. 174, in which the court held that a stevedore, injured while working on an unseaworthy barge, was entitled to recover from the barge owner, notwithstanding the fact that the accident was due in part to the negligence of employees of a steamer to which cargo was being transferred from the barge at the time of the accident.