Jesse **STRANAHAN**, Plaintiff,

v.

**A/S ATLANTICA & TINFOS PAPIR-FABRIK**, Defendant and Third-Party Plaintiff, Appellee and Cross-Appellant,

v.

**W. J. JONES & SON, INC.**, Third-Party Defendant and Appellee,

and

**Weyerhaeuser Company**, Third-Party Defendant and Appellant.

Nos. 71-2943, 71-2974.

United States Court of Appeals, Ninth Circuit.

Dec. 4, 1972.

Rehearings Denied Jan. 2, 1973.

Ridgway K. Foley, Jr. (argued), Paul N. Daigle, Kenneth E. Roberts, of Souther, Spaulding, Kinsey, Williamson & Schwabe, Portland, Or., for appellant.

John R. Brooke (argued), of Wood, Wood, Tatum, Mosser & Brooke, Portland, Or., Jerard S. Weigler (argued), of Lindsay, Nahstoll, Hart, Duncan, DaFoe & Krause, Portland, Or., Raymond J. Conboy, of Pozzi, Wilson & Atchison, Portland, Or., for appellee.

Before WRIGHT and CHOY, Circuit Judges, and LINDBERG,* District Judge.

CHOY, Circuit Judge:

Weyerhaeuser Company (Weyerhaeuser) appeals from a judgment of the district court, holding the appellant liable to indemnify A/S Atlantica & Tinfos Papirfabrik (Atlantica) for damages awarded by a jury to Jesse Stranahan, a Weyerhaeuser employee, for injuries he sustained during loading operations aboard Atlantica's vessel, the Hoegh Mallard. Atlantica cross-appeals from the district court's holding that W. J. Jones & Son, Inc. (Jones), the stevedore company loading Weyerhaeuser's cargo, is not obligated to indemnify Atlantica. We reverse on both the appeal and the cross-appeal.

Pursuant to a charter party agreement between Weyerhaeuser and Atlantica, the Hoegh Mallard tied up at Weyerhaeuser's dock in Coos Bay, Oregon to take on a load of lumber products. On June 28, 1969, about 6:00 p. m., the night officer of the ship switched on large spotlights located on the masts, two for each hold. In addition, he placed four portable, stand-up light units at each hold, for the longshoremen to position on whatever part of the hold was being worked.

Weyerhaeuser's employee, Stranahan, was working alongside Jones' longshoremen in hatch #2 that night. When the crew in #2 hatch took a coffee break about 1:00 a. m., the wings of the hold had been partially filled with four-foot bundles of lumber stacked two high, leaving space for a man to walk on the

---

* The Honorable William J. Lindberg, United States Judge for the District of Oregon, sitting by designation.

top of the stacks. The square of the hatch[1] was still unloaded.

At about 1:25 a. m. the crew returned from their coffee break, entering the hold single-file, since only one man at a time could go down the ladder. Stranahan walked across the lumber stacks, looking for a way to get down to his work area in the square of the hatch. He got to the edge of a stack, peered over and saw what appeared to be a ledge between the top lumber bundle and the bottom one. In fact, this was a false image created by shadows from the cross-paths of light coming from several light sources around the hatch. Stranahan stepped on the false ledge and tumbled to the floor of the hatch, breaking his hip.

He sued Atlantica for maintaining an unseaworthy vessel and won a jury award of $71,748.50, plus interest and attorney's fees. Atlantica then filed a third-party complaint against Weyerhaeuser and Jones, contending that either or both were liable in indemnity for Stranahan's injuries. In a pre-trial order, the parties stipulated that the vessel's unseaworthiness was due to inadequate lighting, and that Atlantica was not negligent.

The district judge found that Stranahan's injury was proximately caused by Weyerhaeuser's negligence in failing to provide a safe working place for its employee and that Jones was not negligent and did not breach its warranty of workmanlike service. Therefore, the judge granted indemnity to Atlantica from Weyerhaeuser and dismissed the action against Jones.

Weyerhaeuser challenges the district judge's finding that it was negligent. Weyerhaeuser and Atlantica both challenge the finding that Jones was neither negligent nor in breach of its warranty of workmanlike service.

### I. Scope of Review.

Jones contends that the findings that Weyerhaeuser was negligent and Jones was not are factual determinations which we must presume to be correct, unless "clearly erroneous."[2] Rule 52(a), Federal Rules of Civil Procedure. On the other hand, Weyerhaeuser and Atlantica contend that the question is whether the correct legal principles were applied to the facts of this case.

What happened at the accident is not disputed. Nor could these facts be challenged on this appeal, for Atlantica chose not to appeal the Stranahan jury's finding that the vessel was unseaworthy. Moreover, the parties all stipulated in the pretrial order for this in-

---

1. The "square of the hatch" is that area of the hold which is directly under the hatch opening of the deck above; i. e., it is a square within the larger square of the entire hold.

2. The clearly erroneous rule applies to admiralty accidents. McAllister v. United States, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20 (1954); Rederi A/B Soya v. SS Grand Grace, 369 F.2d 159 (9th Cir. 1966).

 This circuit has adopted a limited scope of review when parties attack a finding of negligence in an admiralty action. In Pacific Tow Boat Co. v. States Marine Corp. of Delaware, 276 F.2d 745 (9th Cir. 1960), we said:

 "Since . . . [McAllister v. United States, 348 U.S. 19, 75 S.Ct. 6, 99 L. Ed. 20] this court has uniformly regarded determinations as to negligence made in admiralty cases as findings of fact which are not to be overturned unless clearly erroneous." (footnote omitted).

 "It is true that any determination as to negligence requires the testing of particular facts against a predetermined standard of conduct. The fixing of that standard is a jural act. To this extent a question of law is involved, and hence a conclusion of law is required, in any determination as to negligence. Nothing said in McAllister or in any of our previous decisions was intended to limit the scope of review in so far as the fixing of the applicable standard of conduct is concerned." 276 F.2d at 752.

 Compare: Romero v. Garcia & Diaz, Inc., 286 F.2d 347, 355–356 (2d Cir. 1961), cert. denied 365 U.S. 869, 81 S.Ct. 905, 5 L.Ed.2d 860 (1961); Mamiye Bros. v. Barber Steamship Lines, Inc., 360 F.2d 774, 776–778 (2d Cir. 1966), cert. denied 385 U.S. 835, 87 S.Ct. 80, 17 L.Ed.2d 70 (1966).

---

**373**

demnity action, that the vessel's unseaworthiness was due to inadequate lighting and that Atlantica was not negligent. These facts could not be contested in the district court, nor can they now be contested.

The facts show that the working place was unsafe, not only for Stranahan, but also for the longshoremen. He fell while walking across the top of a cargo stack where longshoremen worked. He was returning from a coffee break, as were the longshore hatch crew. They all came back into the hold and walked single file across the cargo stacks. Stranahan was preceded by John Messman, a winchdriver whose job duties included a specific authority over safety conditions. Messman vaulted past the same spot from which Stranahan fell. Another longshoreman, Delbert Sutphin, was following Stranahan and he intended to follow Stranahan's footsteps until he saw the latter fall.

The real issue is one of law: Whose duty was it to ensure that lighting was adequate to make working conditions safe?

## II. The Duty to Insure That Lighting Was Adequate.

Under the Safety and Health Regulations for Longshoring, both Weyerhaeuser and Jones are employers,[3] whose responsibility for safe working conditions is defined as follows:

"All walking and working areas shall be adequately illuminated."[4]

"The responsibility for compliance with the regulations of this part is placed upon 'employers' . . ."[5]

In other words, Weyerhaeuser and Jones shared the responsibility of seeing that hatch #2 of the Hoegh Mallard was properly lighted.

Atlantica contends that Weyerhaeuser failed to comply with the regulation and was thus negligent *per se*. Grigsby v. Coastal Marine Service, 412 F.2d 1011 (5th Cir. 1969). We do not favor such a mechanical approach.

It is not enough just to say, "The lighting was inadequate; therefore, the employer was negligent," at least where the responsibility for compliance is shared by two employers. If both were negligent, then they must share the burden of indemnifying the shipowner for the latter's liability in maintaining an unseaworthy vessel. This is subject to the conceptual limitations of the "unseaworthiness" doctrine, as recently set forth by the Supreme Court in Usner v. Luckenbach Overseas Corp., 400 U.S. 494, 91 S.Ct. 514, 27 L.Ed.2d 562 (1971).

One employer may have acted reasonably within his power to insure compliance with a given regulation. If so, he may not be negligent. Still, he may have breached a warranty of workmanlike service. Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956).

If both employers acted reasonably to insure compliance, but the dangerous condition still existed, then liability may be based, not on negligence, but on the strict liability of the warranty of workmanlike service. *Ryan, supra.*

Several factors must be taken into account, in determining whether an employer has complied with the regulations. How the parties define their relative obligations *in contractu* may shift or apportion the burden of compliance with the Health and Safety Regulations. Industry customs concerning who has operational control of loading may indicate that one party justifiably relied upon another to take the actual steps of making a working place safe for the workers on the pier and aboard ship.

---

3. An employer under the regulations "means an employer any of whose employees are employed, in whole or in part, in longshoring operations or related employments, . . ." 29 C.F.R. ¶ 1504.3(c).

4. 29 C.F.R. ¶ 1504.92(a).

5. 29 C.F.R. ¶ 1504.2(a).

### Weyerhaeuser's Duty

Atlantica based its claim to indemnity from Weyerhaeuser on both negligence and warranty of workmanlike service. Although the district judge did not rule on the latter issue, Atlantica persists in contending on appeal that Weyerhaeuser breached its warranty. We hold that, in the circumstances of this case, Weyerhaeuser was under no such warranty.

■ Generally, a time-charterer like Weyerhaeuser is not charged with a warranty for workmanlike service. McNamara v. Weichsel, etc., 339 F.2d 475 (2d Cir. 1964); D/S Ove Skou v. Hebert, 365 F.2d 341 (5th Cir. 1966), cert. denied sub nom. Southern Stevedoring & Contracting Co. v. D/S Ove Skou, 400 U.S. 902, 91 S.Ct. 139, 27 L. Ed.2d 139 (1970). However, such an obligation does arise when the time-charterer assumes operational control of loading his own cargo. Hartnett v. Reiss Steamship Co., 421 F.2d 1011 (2d Cir. 1970), cert. denied sub nom. Grain Handling Co. v. Hartnett, 400 U.S. 852, 91 S.Ct. 49, 27 L.Ed.2d 90 (1970).

In *Hartnett*, a mechanical device had been built cn the time-charterer's pier to unload grain from the hold of any ship to a grain elevator. The whole unloading operation was directed by the time-charterer's employees, from the docking of the ship to the assigning of longshoremen to shovel the grain out of the corners of the hold for pickup by the device's buckets. The Second Circuit held that the time-charterer owed a warranty of workmanlike service because it had control of the operation and required the time-charterer to indemnify the ship-owner for a long-shoreman's injury.

■ Here, Jones, the stevedore company, had operational control of the loading. Stranahan was a cargo-checker, who did not handle ship or dockside gear. He simply counted. Scholze, Weyerhaeuser's only other employee aboard the ship was a "super-cargo," whose lim-

ited authority and duties hardly sufficed to substitute Weyerhaeuser as the party with operational control of the loading. Therefore, we hold that Weyerhaeuser did not owe a warranty of workmanlike service.

■ Neither was Weyerhaeuser negligent. Weyerhaeuser met its "responsibility for compliance" under the Safety and Health Regulations as to adequate lighting by contracting for Atlantica and Jones to provide such lighting aboard ship and by relying on Jones, as the party with operational control, to handle the lights in a safe manner.

The charter party between Weyerhaeuser and Atlantica provided:

". . . Owner is also to provide on the vessel sufficient lights for night work and to maintain same in efficient working order . . ."

Atlantica supplied two mast lights and four portable light units.

Weyerhaeuser and Jones stipulated in their contract that if the lights furnished by the shipowner were inadequate in the opinion of Jones' employees, Jones was to obtain more lights and charge the cost to the shipowner. Jones did not get more lights. Weyerhaeuser justifiably relied on Jones for adequate lighting, not just because of contractual provisions but also because Jones had a clear operational control over the entire loading. The longshoremen working hatch #2 placed the lights that created a false shadow which deceived Stranahan when he stepped off the cargo stack.

■ Atlantica and Jones argue that Weyerhaeuser was negligent because the latter's other employee on board, Scholze the "supercargo," had duties which included inspection of Stranahan's working area. This inspection duty is not sufficient basis for a finding that Weyerhaeuser was negligent. The "supercargo" could merely suggest to the stevedore's walking boss or hatch boss that something might not be safe. The

decision whether to alter some condition was usually made by the latter, not by the supercargo.

The supercargo's failure to discover a condition which all witnesses agreed was not obvious did not constitute negligence on the part of Weyerhaeuser.

*Jones' Duty*

For much of the same reasons, we cannot hold that Jones was negligent because none of its employees perceived the false shadow in #2 hatch. However, we do find that the existence of the condition was a breach of Jones' warranty of workmanlike service.

 The warranty is breached when a condition is dangerous and was created by the actions of the stevedore's employees. *Ryan, supra.* Both elements exist here. Jones' longshoremen positioned the portable light units so that the cross-paths of light created a false shadow that appeared to Stranahan to be a ledge which would bear his weight. That the condition was dangerous is obvious.

The benefit of protection under the warranty extended not only to the stevedore's own employees, but also to the employees of a third party. In Sanderlin v. Old Dominion Stevedoring Co., 385 F.2d 79 (4th Cir. 1967), a cargo checker who was injured by the acts of a longshoreman recovered against the stevedore company under the warranty of workmanlike conduct. There, the cargo checker was employed by the shipowner; here, Stranahan worked for the time-charterer. If anything, Stranahan's right to recover was stronger for the warranty arose, at least in part, out of the contract between Jones and Stranahan's employer, Weyerhaeuser.

III. *Conclusion.*

Weyerhaeuser was not at fault for this accident. Atlantica is entitled to full indemnity from Jones, for breach of warranty of workmanlike service.

Reversed.