**Gerald Lee GRIFFIN and Elizabeth Griffin, his wife, Plaintiffs,**

v.

**UNITED STATES of America, Defendant and Third-Party Plaintiff-Appellee,**

v.

**MATSON TERMINALS, INC., Third-Party Defendant-Appellant.**

**No. 73–2811.**

United States Court of Appeals, Ninth Circuit.

April 2, 1975.

Robert V. Holland (argued), Seattle, Wash., for appellants.

Wm. E. Gwatkin, III (argued), Dept. of Justice, San Francisco, Cal., for appellee.

## OPINION

Before CHOY and GOODWIN, Circuit Judges, and BURNS,* District Judge.

PER CURIAM:

Matson Terminals appeals a judgment of liability under an indemnity contract with the United States, owner of a vessel on which a longshoreman was injured. We affirm.

Gerald Griffin, a longshoreman employed by Matson, was loading lumber aboard the USNS "Lt. Robert Craig" on February 19, 1969. While climbing up a ladder from a ship hold, he sustained an eye injury when struck by an unidentified falling object. Griffin's action against the United States for unseaworthiness was dismissed by the district court. This court reversed, determined that the ship was unseaworthy, and remanded for computation of damages and resolution of the indemnity claim. Griffin v. United States, 469 F.2d .671 (9th Cir. 1972).

The indemnity contract sets two conditions to Matson's liability.[1] First, a

---

* Honorable James M. Burns, United States District Court for the District of Oregon, sitting by designation.

1. "The Contractor shall be . . . responsible for, and hold the Government harmless from, bodily injuries . . . occasioned either in whole or in part by the negligence or fault of the Contractor, his officers, agents, or employees in the performance of work under this contract.

. . . . .

The Contractor shall not be responsible to the Government for and does not agree to hold the

Government harmless against loss or damage to property or bodily injury to or death of persons if: (i) the unseaworthiness of the vessel or failure or defect of the gear or equipment furnished by the Government contributed jointly with the fault or negligence of the Contractor in causing such damage, injury or death, and the Contractor, in his officers, agents, and employees, by the exercise of due diligence, could not have discovered such unseaworthiness or defect of gear or equipment, or through the exercise of due diligence could not otherwise have avoided such damage, injury, or death . . ."

Matson employee must have been negligent. Second, unseaworthiness of the ship must have been discoverable, or the injury otherwise avoidable, through the exercise of due diligence by Matson.[2]

Taking no new testimony, relying instead on the trial transcript, the district court on remand held Matson liable under the indemnity agreement.[3] The court concluded that one of Griffin's fellow workers, Reihing, had negligently caused the object to fall, but made no formal finding of fact to this effect. No formal or informal finding on due diligence was made.

■ Any error in the trial court's failure to make a designated Rule 52 (F.R. Civ.P.) finding of fact that Reihing was negligent was harmless. Boutte v. M/V Malay Maru, 370 F.2d 906, 907 (5th Cir. 1967). The record discloses that critical determination in the judge's explicit statement during the trial.[4] See generally, Dann v. Studebaker-Packard Corp., 288 F.2d 201, 205–206 (6th Cir. 1961); Graham v. United States, 243 F.2d 919, 923 (9th Cir. 1957).

■ Applying the clearly erroneous standard, we affirm the trial court's informal finding of negligence. Reihing had a duty to exercise reasonable care for the safety of his fellow employees. See, Arista Cia. DeVapores, S.A. v. Howard Terminal, 372 F.2d 152, 154 (9th Cir. 1967). Reihing did not look beneath his feet while climbing up the ladder, a failure that the trial court could plausibly conclude was a breach of his duty.

■ Matson's liability to the United States depends also on its failure to exercise due diligence. Although the trial court made no finding on this point, in an opinion or elsewhere in the record, reversal is not required. Since Reihing's negligence sent the unidentified object falling and caused the injury, the accident would not have occurred if Matson, acting through its agent Reihing, had observed a proper standard of care. Conversely, Matson, again through its agent Reihing, could have prevented the accident by the exercise of due diligence, assuming that the agent's and Matson's standards of care are congruent.

In *Arista Cia., supra,* this court held, in effect, that a longshoreman's duty of care was equivalent to his employer stevedore's implied warranty of workmanlike service. That equivalence is particularly appropriate here, where the longshoreman's negligence was in failing to watch out for debris on the ladder, precisely the condition of unseaworthiness Matson should have discovered. In these circumstances, the trial court's failure to make findings as to Matson's due diligence is therefore harmless error.

Affirmed.

2. Matson's negligence and the ship's unseaworthiness are not mutually exclusive.

"An unseaworthy condition that causes no damage until brought into play by the negligence of a longshoreman employed by the stevedore is nonetheless an unseaworthy condition in the workman's action against the shipowner. E. g., Alaska Steamship Co. v. Garcia, 378 F.2d 153 (9th Cir. 1967)." Griffin v. United States, 469 F.2d 671, 672 (9th Cir. 1972). On the previous appeal, this court held that the ship was unseaworthy because dangerous debris had accumulated in a place from which it could fall and injure someone.

3. The court made a determination of the amount of plaintiff's damages as required by the remand.

4. "Also, I find that there was negligence on the part of the fellow employees [sic], who obviously stepped and kicked something down, —that is what he said he did, anyhow, stepped on something and caused it to fall down the escape hatch shaft, and struck Mr. Griffin in the eye." R.T. 168–169. "Well, I conclude that there was something that fell, and that Reihing caused it to fall, I have already told you that, and that it was his fault that it fell. I have already made up my mind on that." R.T. 209.