**HANSEATISCHE REEDEREI EMIL OFFEN & COMPANY, Plaintiff-Appellant and Cross-Appellee,**

v.

**MARINE TERMINALS CORPORATION, Defendant-Appellee and Cross-Appellant.**

Nos. 76–1462, 76–1463.

United States Court of Appeals, Ninth Circuit.

Jan. 31, 1979.

---

John W. Ford (argued), Lillick, McHose & Charles, San Francisco, Cal., for plaintiff-appellant and cross-appellee.

Robert E. Babcock (argued), Portland, Or., for defendant-appellee and cross-appellant.

Before SMITH,* DUNIWAY and WALLACE, Circuit Judges.

* The Honorable J. Joseph Smith, Senior United States Circuit Judge for the Second Circuit, sitting by designation.

DUNIWAY, Circuit Judge:

Hanseatische Reederei Emil Offen & Company (the shipowner) was held liable, on the basis of unseaworthiness and negligence, to two longshoremen, Randolph and Periot, employees of a stevedore, Marine Terminals Corporation. The stevedore had contracted to unload Hanseatische's ship, the *Ditmar Koel*, and the longshoremen were employed by the stevedore to do that work. The shipowner then sought indemnity from the stevedore for the amounts of the longshoremen's judgments and for the expenses incurred in defending their actions, including attorneys' fees. The District Court gave judgment for the shipowner for the amount of Randolph's judgment, but denied recovery for the amount of Periot's judgment. It also denied the shipowner its expenses in defending the actions. The shipowner appeals. The stevedore also appeals, seeking reversal of the shipowner's recovery of the amount of Randolph's judgment, and recovery of its expenses in defending the shipowner's action for indemnity. On the shipowner's appeal, we reverse. On the stevedore's appeal, we affirm.

## I. *The Facts.*

The work of unloading the ship was proceeding when the two longshoremen were injured. Periot was working in No. 2 hold. Randolph had been working in No. 1 hold, had left for a coffee break, and had returned to the ship. He called down into No. 2 hold and asked if that was where he was to work, and was told that it was.

The various holds were separated by bulkheads athwartship. There were three decks below the main deck and above the lower hold. On the first 'tween deck, holes in the bulkheads, near each side of the ship, connected No. 2 and No. 3 holds, so that automobiles could be moved from one hold to the other without their being hoisted to the main deck. The main deck hatchcover of No. 2 hold was open; that of No. 3 hold was closed, so that it was pitch dark in that hold. Also, in No. 3 hold, all or nearly all of the deck plates in the three 'tween decks had been removed, so that open voids ran from below the main deck to the bottom of the hold, four deck levels below.

Randolph asked a member of the ship's crew how to get down into No. 2 hold. The crew member directed Randolph through an unlocked door into a masthouse on the main deck. A ladder led down from the masthouse to the upper 'tween deck. The ladder did not, however, go to No. 2 hold; it went to a portion of the mostly removed upper 'tween deck within No. 3 hold. Randolph climbed down the ladder and found himself in a totally dark area with no one else around. He did not have any kind of portable light. Nevertheless, when he reached the bottom of the ladder, he remained in the hold and began walking about. He stepped off into the open area where the decks had been removed, and fell to the bottom of the hold, sustaining permanently disabling injuries.

At this point, Periot was working on the upper 'tween deck in No. 2 hold. Hearing what sounded like cries for help coming from No. 3 hold, Periot left his work area and went through one of the two large openings in the bulkhead separating the two holds. Though Periot also did not have a light, and although No. 3 hold remained in total darkness, Periot walked about the upper 'tween deck of No. 3 hold trying to follow the cries for help. As had Randolph, Periot stepped off into an open area. He fell as far as the lower car deck, receiving severe injuries.

The District Court found No. 3 hold unseaworthy because:

(a) It was totally lacking in artificial light;

(b) It was covered at the main deck and thereby totally lacking natural light;

(c) It was totally open from the upper 'tween deck level to the lower hold except for portions of the lower car deck still in place on the port side;

(d) It was lacking in any ropes, barriers or stanchions around the open area in the upper 'tween deck;

(e) It was lacking in any ropes, barriers or stanchions across either of the bulkhead openings leading from No. 2 to No. 3 at the upper 'tween deck level;

(f) It was devoid of anything that would give notice that this totally dark area contained a very large unprotected opening in the deck, other than such notice that total darkness may have given a person about to enter.

The District Court also found that the shipowner had been negligent in failing to warn of the dangerous conditions, in misdirecting Randolph to the ladder which led down to No. 3 hold, and in creating or not remedying most of the foregoing specific conditions which it found to make the hold unseaworthy. Finding that the unseaworthiness and the negligence of the shipowner had proximately caused the injuries to Randolph and Periot, the District Court awarded them damages against the shipowner, reducing its award on the basis of its further finding that both Randolph and Periot were contributorily negligent. On appeal, the stevedore does not dispute the findings that its longshoremen were negligent.

The District Court, on the shipowner's claim for indemnity, attributed Randolph's negligence to the stevedore. It declined to impute Periot's negligence to the stevedore, holding that Periot's attempt to rescue Randolph did not occur in the course of his employment.

## II. Indemnity for the Randolph Judgment.

The stevedore's contract with the shipowner included a "warranty of workmanlike service," an implied warranty to the shipowner that the stevedore would carry out the contract competently and safely. *Ryan Stevedoring Co., Inc. v. Pan Atlantic Steamship Corp.*, 1956, 350 U.S. 124, 133–34, 76 S.Ct. 232, 100 L.Ed. 133. Breach of the warranty by the stevedore renders the stevedore liable to the shipowner for all foreseeable harms resulting from the breach. *Arista Cia. DeVapores, S. A. v. Howard Terminal*, 9 Cir., 1967, 372 F.2d 152, 154, and cases there cited. Those foreseeable harms to the shipowner include lawsuits brought against the shipowner by injured longshoremen who allege that their injuries in part resulted from the unseaworthiness of shipowner's vessel. *Weyerhaeuser S.S. Co. v. Nacirema Operating Co., Inc.*, 1958, 355 U.S. 563, 567, 78 S.Ct. 438, 2 L.Ed.2d 491.

As we explained in *Arista, supra*, The stevedore company's duty under its warranty includes the duty to provide longshoremen who will exercise reasonable care for their own safety, as well as for the safety of others, in the performance of their work.
372 F.2d at 154.

When an individual longshoreman fails to exercise reasonable care for his own safety while on the job, his negligence is a breach of the stevedore's warranty of workmanlike service. Even if the longshoreman's negligence injures only himself, if those injuries lead to a lawsuit against the shipowner based upon the alleged unseaworthiness of shipowner's vessel, the stevedore must indemnify the shipowner for any damages assessed. *Arista, supra*, 372 F.2d at 154, as well as for its attorney fees and litigation expenses, *Jones Stevedoring Company v. Nippo Kisen Company, Ltd.*, 9 Cir., 1969, 419 F.2d 143. As we said in *Griffin v. United States*, 9 Cir., 1975, 513 F.2d 1321, 1323, a "longshoreman's duty of care [is] equivalent to his employer stevedore's implied warranty of workmanlike service."

Application of these rules to the facts before us requires that we affirm the judgment of the District Court insofar as it grants the shipowner indemnity from the stevedore for the judgment of Randolph against the shipowner.

The stevedore relies upon *Stranahan v. A/S Atlantica & Tinfos Papirfabrik*, 9 Cir., 1973, 471 F.2d 369, 373, but that decision in no way repudiated our *Arista, Jones Stevedoring* and *Griffin* cases. *Stranahan* merely held that a number of factors would be considered in determining which of two employers had responsibility for complying with the Safety and Health Regulations for Longshoring.

The stevedore asserts that while the shipowner was negligent, the District Court

erred in holding the ship unseaworthy. It then attacks the granting of any kind of indemnity in this case on the ground that a shipowner's right of indemnity against a negligent stevedore should only come into play when the shipowner is held liable without regard to fault under the doctrine of unseaworthiness. We need not pursue this line of argument. The District Court found that the vessel was unseaworthy, and that Randolph's negligence combined with that unseaworthiness to produce his injuries.[1] These are findings of fact and are not clearly erroneous. Rule 52(a) F.R.Civ.P.; *McAllister v. United States*, 1954, 348 U.S. 19, 20–21, 75 S.Ct. 6, 99 L.Ed. 20; *Garrett v. United States Lines, Inc.*, 9 Cir., 1978, 574 F.2d 997, 999; *Rederi A/B Soya v. S.S. Grand Grace*, 9 Cir., 1966, 369 F.2d 159, 162–63; *Stranahan v. A/S Atlantica & Tinfos Papirfabrik*, 9 Cir., 1973, 471 F.2d 369, 372, fn. 2; *Crescent Wharf & Warehouse v. Compania Naviera De Baja California*, 9 Cir., 1966, 366 F.2d 714, 719; *Molitor v. American President Lines, Ltd.*, 9 Cir., 1965, 343 F.2d 217, 219; *Pacific Tow Boat Co. v. States Marine Corp. of Delaware*, 9 Cir., 1960, 276 F.2d 745, 752, and cases cited therein.

As the Court said in *Waterman Steamship Corp. v. Dugan & McNamara, Inc.*, 1960, 364 U.S. 421, 423, 81 S.Ct. 200, 201, 5 L.Ed.2d 169 "the warranty may be breached when the stevedore's negligence does no more than call into play the vessel's unseaworthiness." *See, also, Crumady v. The J. H. Fisser*, 1959, 358 U.S. 423, 429, 79 S.Ct. 445, 3 L.Ed.2d 413; *Judith Ann Liberian Transport Corp. v. Crawford*, 9 Cir., 1968, 399 F.2d 924, 926; *Rederi A/B Nordstjernan v. Crescent Wharf & Warehouse Co.*, 9 Cir., 1967, 372 F.2d 674, 676–77.

■ Finally, the stevedore relies upon *Grayson v. Cordial Shipping Co.*, 7 Cir., 1974, 496 F.2d 710, 714, for the proposition that the shipowner's duty to provide seaworthy work areas only extends to those areas of the vessel where longshoremen may be reasonably expected to go. While in this case the District Court did not make an explicit finding that it was reasonably foreseeable that the stevedore's longshoremen would enter No. 3 hold, we find that conclusion implicit in the findings of fact that the District Court did make. *See Griffin v. United States*, 9 Cir., 1975, 513 F.2d 1321, 1323, holding that the clearly erroneous standard applies to an informal finding of negligence in an admiralty case.

■■ Where egregious conduct on the part of the shipowner effectively prevents the stevedore from satisfying its implied warranty of workmanlike service by exercising due care to minimize the risk of injury, we do deny indemnity under the *Weyerhaeuser S.S. Co. v. Nacirema Co.* proviso that indemnity is only available to the shipowner "absent conduct on its part sufficient to preclude recovery." 1958, 355 U.S. 563, 567, 78 S.Ct. 438, 441, 2 L.Ed.2d 491. The stevedore disputes the District Court's refusal to find Hanseatische's negligence "conduct . . . sufficient to preclude recovery." We conclude, however, that the District Court's finding that the shipowner's conduct was not such as to preclude indemnity is not clearly erroneous. *See General Construction Co. v. Umpqua River Navigation Co.*, 9 Cir., 1972, 458 F.2d 1186, 1189, applying the clearly erroneous standard to review of the trial court's determination of whether a shipowner's conduct should preclude indemnity.

■ *H & H Ship Service Co. v. Weyerhaeuser Line*, 9 Cir., 1967, 382 F.2d 711, 713,

---

1. This question will soon become moot given the Longshoremen's and Harbor Workers' Compensation Act Amendments of 1972, 86 Stat. 1251, 1263, 33 U.S.C. §§ 901 et seq., § 905. The Act overrules *Seas Shipping Co. v. Sieracki*, 1946, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 under which longshoremen working for stevedore companies have been able to sue shipowners as third parties for injuries caused by unseaworthy vessel conditions. Longshoremen must henceforth prove negligence on the part of the shipowner. Given these changes, 33 U.S.C. § 905(b) eliminates shipowner indemnity actions under the *Ryan* warranty of workmanlike performance. The 1972 amendments were not made retroactive and do not apply to this case. The injuries here occurred in 1969.

sets out a two step test. First, if the shipowner's conduct does not " 'prevent or seriously handicap the stevedore' in doing a workmanlike job," the shipowner is not to be precluded from indemnification. *Accord, United States v. San Francisco Elevator Company*, 9 Cir., 1975, 512 F.2d 23, 27. Second, even conduct which does amount to such a handicap will not necessarily preclude indemnification. *Victory Carriers, Inc. v. Stockton Stevedoring Co.*, 9 Cir., 1968, 388 F.2d 955, 960. In the case at bar the shipowner did not prevent the stevedore from doing a workmanlike job. When Randolph reached the bottom of the ladder, he could simply have climbed back out. *See also, Rodriguez v. Olaf Pedersen's Rederi A/S*, 2 Cir., 1975, 527 F.2d 1282, 1284.

Finally, the stevedore argues that even if it were foreseeable that longshoremen would enter the parts of No. 3 hold near No. 2 hold, it was not foreseeable that they would enter *all* parts of No. 3 hold. While in a particular case a shipowner may have a seaworthiness duty with respect to only a portion of a particular hold, in the case at bar both Randolph and Periot injured themselves in the part of No. 3 hold that was closest to the No. 2 hold work area.

In sum, the District Court correctly granted indemnity against the Randolph judgment.

### III. *Indemnity for the Periot Judgment.*

The District Court denied the shipowner indemnity for the judgment awarded Periot, the would-be rescuer, on the ground that Periot's "good samaritan act" could not be considered part of the stevedoring services the stevedore had contracted to provide. Apparently, the District Court also believed that it was not foreseeable that Randolph's plight might call forth a rescue attempt during which a would-be rescuer longshoreman would injure himself by reason of the unseaworthy conditions in No. 3 hold.

The shipowner argues that Periot was acting within the course and scope of his employment when he responded to Randolph's cries for help, citing cases such as *Anderson v. Atchison, T. & S.F. R.R.*, 1948,

333 U.S. 821, 68 S.Ct. 854, 92 L.Ed. 1108, holding that an employer has a duty to rescue injured employees. The shipowner further relies upon an admission by the stevedore that if Periot entered the No. 3 hold to rescue another person, that rescue attempt would have been

> altogether in accordance with the highest traditions of the industry and therefore undertaken with the tacit . . . approval and knowledge of Marine Terminals Corporation.

We need not resolve the scope of employment issue, because we hold that Periot's injuries proximately and foreseeably resulted from Randolph's breach of the stevedore's warranty. As we have seen, the stevedore must indemnify the shipowner for all foreseeable harms caused by its breach of warranty. The combination of Randolph's breach of the warranty and the unseaworthiness caused his injuries and his cries for help. Those cries for help foreseeably caused another, Periot, to enter No. 3 hold, and thus necessarily to encounter the unseaworthy conditions. Accordingly, the shipowner is entitled to indemnity.

Tort law has long recognized what has become known as the "danger invites rescue" rule, that the foreseeable damages from a wrongful act include damages for the injuries sustained by one who seeks to rescue the person first endangered by that wrongful act. Judge Cardozo, as he then was, wrote the classic statement of the rule:

> Danger invites rescue. The cry of distress is the summons to relief. The law does not ignore these reactions of the mind in tracing conduct to its consequences. It recognizes them as normal. It places their effects within the range of the natural and probable. . . . The railroad company whose train approaches without signal is a wrongdoer toward the traveler surprised between the rails, but a wrongdoer also to the bystander who drags him from the path. . . . The emergency begets the man. The wrongdoer may not have foreseen the coming of a deliverer. He is accountable as if he had.

*Wagner v. International R.R. Co.*, 232 N.Y. 176, 180, 133 N.E. 437, 437–38 (1921). The California Supreme Court recently agreed that "the theory which underlies the rescue rule is, in essence, that 'rescuers as a class, are always foreseeable when the defendant's negligence endangers anyone.'" *Solgaard v. Guy F. Atkinson*, 6 Cal.3d 361, 368, 99 Cal.Rptr. 29, 33, 491 P.2d 821, 825 (1971). *See also, Guarino v. Mine Safety Appliance Co.*, 1969, 25 N.Y.2d 460, 306 N.Y. S.2d 942, 255 N.E.2d 173 applying the rule when a manufacturer's breach of its implied warranty of merchantability causes the original injuries.

*Pastore v. Taiyo Gyogyo KK*, 3 Cir., 1978, 571 F.2d 777, is closely in point. There the stevedore's employees started a fire inside a hold by carelessly tossing away cigarette butts near combustible cargo coverings. When firemen responded to calls for assistance, the ship's crew negligently failed to warn the firemen about certain conditions in the hold. As a result, a fireman rested his ladder upon a pile of frozen lamb covered by a tarpaulin, thinking that he had placed his ladder upon a solid deck. The ladder slipped. The injured fireman won a negligence judgment against the shipowner. The trial judge then set aside a jury's verdict that the shipowner was entitled to indemnity against the stevedore. The Third Circuit reversed, awarding the shipowner its *Ryan* indemnity. The court began by explicitly equating the tort concept of proximate cause with the contract principle of foreseeability. 571 F.2d at 782. It then held that it was foreseeable that the emergency situation created by the breach of warranty would call forth the rescue efforts by the firemen, that under the pressure of responding to an emergency situation, "a certain amount of risk-taking must be anticipated," and that it thus could "not be said to be highly extraordinary that a fireman fell and was injured while extinguish-

ing a fire caused initially by a party's negligence." 571 F.2d 782–83.

Here, we find it just as foreseeable that Randolph's cries for help would call forth Periot's rescue attempt and that in the course of his rescue attempt, Periot would approach the area where the victim lay and thus encounter the same unseaworthy conditions which had injured Randolph. Given the injuries Periot sustained as a result of those dangerous conditions, his lawsuit against the shipowner was just as foreseeable as Randolph's. We can think of no good reason for not applying the danger invites rescue rule in this case.

We conclude that we must reverse the District Court's denial of indemnity with respect to the Periot judgment.[2]

## IV. Indemnity for the Attorneys' Fees and Expenses that the Shipowner Incurred in Defending Against the Damage Actions Brought by Randolph and Periot.

■ Just as it was foreseeable that the shipowner might lose the longshoremen's lawsuits and have to pay damages, so also it was foreseeable that the shipowner would incur attorneys' fees and expenses in defending the suits. In *Arista Cia. DeVapores, S. A., supra*, we made it clear that,

> The foreseeable damages recoverable for breach of warranty include reasonable attorneys' fees and expenses incurred in defending, successfully or unsuccessfully, the injured party's action for damages.

372 F.2d at 154, quoting *Lusich v. Bloomfield Steamship Co.*, 5 Cir., 1966, 355 F.2d 770, 776.

*See also, United States v. San Francisco Elevator*, 9 Cir., 1975, 512 F.2d 23, 28; *Flunker v. United States*, 9 Cir., 1975, 528 F.2d 239, 246–47. We thus must reverse the denials of attorneys' fees and expenses.

---

**2.** The shipowner also asserts that the stevedore breached its warranty of workmanlike service by violating §§ 1504.92(a) and (c) of the 1969 Safety and Health Regulations for Longshoring. Those regulations require the adequate illumination of all "walking and working areas," and

that employees not be permitted to enter dark holds without suitable portable lights. Given our determination that Periot's injuries proximately and foreseeably resulted from Randolph's breach of the stevedore's warranty, we need not pass upon this alternate contention.

### V. *The Stevedore's Appeal.*

The stevedore asserts that if the shipowner's conduct were sufficient to preclude recovery, *Federal Marine Terminals, Inc. v. Burnside Shipping Co., Ltd.*, 1969, 394 U.S. 404, 89 S.Ct. 1144, 22 L.Ed.2d 371 would entitle it to its attorneys' fees and expenses in defending against the shipowner's indemnity claim. Because we have found that the shipowner's negligence did not amount to conduct sufficient to preclude its recovery, we do not reach the stevedore's contention.

### VI. *Conclusion.*

The judgment is affirmed to the extent that it grants the shipowner indemnity for the Randolph judgment. Insofar as the judgment denies the shipowner indemnity for the Periot judgment, and denies it indemnity for its attorneys' fees and expenses in defending against the two longshoremen's suits, it is reversed. The case is remanded to the District Court for a determination of the amount of the shipowner's reasonable attorneys' fees and expenses, and for entry of a judgment consistent with this opinion. The denial of attorneys' fees and expenses to the stevedore is affirmed.