James F. PASTORE

v.

TAIYO GYOGYO, K.K., Appellant,

v.

LAVINO SHIPPING CO. and City of Philadelphia.

No. 77–1554.

United States Court of Appeals, Third Circuit.

Argued Jan. 9, 1978.

Decided Feb. 15, 1978.

---

**3.** In contrast to the ambiguous legislation enacted by the Virgin Islands on the subject of operating motor vehicles while under the influence of alcohol or drugs, the three states which with the Virgin Islands comprise the Third Circuit prohibit:

A. *Delaware:* [A person who] drives, operates or has in actual physical control a vehicle while under the influence of intoxicating liquor or of any drug or any combination of drugs and intoxicating liquor . . . . Any person who drives, operates or has in actual physical control a vehicle while such person's blood has reached a blood alcohol concentration of one tenth of 1% or more by weight as shown by a chemical analysis of a blood, breath or urine sample taken within 4 hours of the alleged offense shall be guilty under this section. This provision shall not preclude a conviction based on other admissible evidence.

Delaware Code tit. 21, § 4177 (Cum.Supp. 1976).

B. *New Jersey:* A person [to operate] a motor vehicle while under the influence of intoxicating liquor, narcotic, hallucinogenic or habit-producing drug, or permits another person who is under the influence of intoxicating liquor, narcotic, hallucinogenic or habit-producing drug to operate a motor vehicle owned by him or in his custody or control . . . . .

N.J.Stat.Ann. § 39:4–50 (1973).

C. *Pennsylvania:* A person [from driving a] vehicle while:

(1) under the influence of alcohol to a degree which renders the person incapable of safe driving;

(2) under the influence of any controlled substance, as defined . . . to a degree which renders the person incapable of safe driving or

(3) under the combined influence of alcohol and a controlled substance to a degree which renders the person incapable of safe driving.

75 Pa.Cons.Stat.Ann. § 3731 (Purdon) (1977 pamphlet).

Robert B. White, Jr., Rawle & Henderson, Philadelphia, Pa., for appellant Taiyo Gyogyo, K.K.

Carl M. Mazzocone, Philadelphia, Pa., for appellee James F. Pastore.

Agostino Cammisa, Asst. City Sol., James M. Penny, Jr., Deputy City Sol., Sheldon L. Albert, City Sol., Philadelphia, Pa., for appellee City of Philadelphia.

Mark D. Alspach, Krusen, Evans & Byrne, Philadelphia, Pa., for appellee Lavino Shipping Co.

Before ADAMS, BIGGS and WEIS, Circuit Judges.

## OPINION OF THE COURT

WEIS, Circuit Judge.

A discarded cigarette butt, a pile of frozen lamb, and a slipping ladder, are the unlikely ingredients of this maritime personal injury case. We conclude that they are sufficiently connected by the circumstances to justify a jury's finding legal causation between a smoldering fire and the plaintiff's fall from a ladder. Accordingly, we affirm a judgment in favor of the plaintiff against a shipowner, and vacate a judgment n. o. v. in favor of a stevedore on an indemnification claim.

Plaintiff Pastore, a fireman employed by the City of Philadelphia, was injured while fighting a fire aboard the M/V Juyo Maru docked at the Packer Avenue Marine Terminal in Philadelphia on December 14, 1971. He filed suit charging negligence by the defendant shipowner, Taiyo Gyogyo, K.K., which in turn joined the stevedore, Lavino Shipping Company, as a third-party defendant on a claim of indemnity, and the City of Philadelphia on allegations of joint liability.

At trial, the district judge directed a verdict in favor of the city, and submitted the remainder of the case to the jury. In response to special interrogatories, the jury found the shipowner was negligent, Pastore was fifteen percent contributorily negligent, the stevedore breached its warranty, and its breach was a proximate cause of the accident. Damages were fixed at $75,-000.00. After argument on post-trial motions, the trial judge entered judgment n. o. v. in favor of the stevedore, and denied defendant shipowner's requests for a new trial and judgment n. o. v.

The evidence at trial was that the M/V Juyo Maru, with a cargo of frozen meat from Australia, arrived at the Packer Avenue Terminal early on December 13, 1971. Within hours, longshoremen employed by the stevedore, Lavino Shipping Company, began discharging that part of the cargo destined for Philadelphia. The carcasses were individually wrapped in vinyl and cheesecloth which were flammable. After seeing one of the longshoremen smoking in the hold, the chief mate ordered the cigarette extinguished and reported the incident to a Lavino foreman. The complaint was repeated later in the day when a similar infraction occurred. On the following morning, a smoldering fire was discovered in the hold and a number of crew members were overcome by smoke. About an hour after the fire was detected, an alarm was received at plaintiff's fire station and the men promptly responded. As commanding officer of the unit, plaintiff rode the first of three fire trucks to the dock. When he arrived, police were assisting one of the stricken crew members from the ship.

After one of the firemen had placed a ladder into No. 1 hatch, plaintiff began to descend. Once he had put both feet on the rungs, the heel of the ladder slipped out of position and the plaintiff fell some distance to the lower deck. The ladder had been positioned on what appeared to be part of the deck below but was actually a tarpaulin or a piece of plywood covering some of the frozen cargo which had been moved there the preceding day. Members of the crew and some of the longshoremen were present on the main deck as the ladder was placed in position but no one warned the firemen that the frozen cargo was stacked on the deck below.

Plaintiff's expert witness testified that a ship's officer should have met the firemen at the gangway and advised them of the nature of the cargo as well as other pertinent conditions about the ship. He also opined that the ship was unseaworthy. In addition, there was testimony from other

witnesses that American cigarette butts were found in the hold in the area near where the longshoremen had been working on the previous day.

In ruling on the post-trial motions, the trial judge concluded there had been sufficient evidence of the shipowner's negligence to sustain the jury's verdict in favor of the plaintiff, and there was enough in the record to support the finding that the stevedore's employees had caused the fire. However, the court held that the plaintiff's accident was not a foreseeable consequence of the stevedore's breach and consequently entered judgment in its favor. The court also determined that the city, as the plaintiff's employer, was not liable as a tortfeasor and refused to alter the directed verdict entered in its favor.

 The shipowner asserts it is entitled to a new trial or judgment n. o. v. because the record does not support a finding of negligence against it. The testimony revealed that the fire engines approached the ship with sirens sounding and it was not contended that the arrival of the firemen went unnoticed. However, no ship's officer met them and although a number of crewmen were in the vicinity of the hatch, they did not caution the plaintiff about the hazardous support for the ladder. The crew was aware that the cargo had been stacked on the lower deck and was deceptive in appearance because of the tarpaulin covering it. Therefore, the issue was whether the shipowner had fulfilled his obligation to exercise reasonable care for the safety of those lawfully aboard his vessel. *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959). The jury could find that the failure to warn under the circumstances amounted to a breach of that duty.[1]

 The shipowner also contends that it was prejudiced by testimony of plaintiff's expert describing conditions which in his opinion made the vessel unseaworthy. That doctrine was not applicable as the trial judge later ruled and he charged the jury only on negligence. However, much of the expert's testimony was relevant to the issue of negligence as well and would have been admissible on that basis. The shipowner, therefore, was not unduly prejudiced since the jury was instructed only that it could find liability on the basis of negligence, and unseaworthiness was not discussed in the charge. We conclude, therefore, that the trial judge properly refused the motions of the defendant for judgment n. o. v. and for a new trial.

In attacking the judgment n. o. v. in favor of the stevedore, the shipowner argues that the jury was entitled to find a causal connection between the stevedore's negligence in starting the fire and the mishap which befell plaintiff. At trial, the judge charged the jury that it could hold Lavino liable if its breach "was a proximate cause of the happening of the accident . . . not only that the breach of warranty played a substantial factor in bringing about the injury to the plaintiff, but also that the injury was either a direct result or a reasonably probable consequence of that breach of warranty."

 The shipowner's claim for indemnity was based upon a breach of the stevedore's warranty to perform its functions in a safe and workmanlike manner. *Ryan Stevedoring Co. v. Pan Atlantic Steamship Corp.*, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956). It was for the jury to determine whether carelessness in smoking and disposing of cigarette butts in the vicinity of a cargo with a combustible covering is a safe and workmanlike performance. We need not review in detail the evidence which the district court found adequate to justify the jury's belief that the stevedore caused the fire. There was enough to support its finding which has not been challenged on this appeal. The issue which is hotly disputed is whether the fire can be said to be a proximate cause of the plaintiff's injuries.

---

1. A property owner aware of a dangerous condition, who is present when firemen arrive and fails to warn them of the condition is subject to liability. *See* Restatement (Second) of Torts § 345(1), Comment d, Illustration 3 (1965). *See also McDaniel v. M/B Lisholt*, 180 F.Supp. 24, 28 (S.D.N.Y.1959), *aff'd*, 282 F.2d 816 (2d Cir. 1960).

■ The stevedore's obligation to the shipowner is contractual, *Weyerhaeuser Steamship Co. v. Nacirema Operating Co.*, 355 U.S. 563, 565, 78 S.Ct. 438, 2 L.Ed.2d 491 (1958); *Ryan Stevedoring Co. v. Pan-Atlantic Steamship Co., supra* at 130–32, 76 S.Ct. 232, and the general correlation between breach and damages is set out in Restatement of Contracts § 330 (1932).[2] Both the shipowner and the stevedore agree that in this setting the tort concept of proximate cause and the contract principle of foreseeability are essentially the same and it is in the application of the standard to the facts at hand that the controversy exists.

■ The stevedore phrases the inquiry as "whether the alleged creation of a smoldering fire by a stevedore can properly be considered a proximate cause of the slipping of the ladder which produced plaintiff's accident and injuries." It seems clear that if the plaintiff's injury had occurred as a result of smoke inhalation, causation would be established since a reasonable person might foresee that a fireman called to the scene would be overcome by smoke. Though not as direct, we think it nevertheless within the jury's competence to determine that a fireman may be injured by other conditions commonly encountered in containing a fire, including falling from a ladder. The careless cigarette smoking did more than merely set the stage for the presence of the firemen aboard the vessel, it required their action in checking the fire with all the attending risks. Certainly, in fire fighting, accidental injury is not uncommon.

■ Here, the shipowner failed to warn the firemen that it was not deck on which the ladder stood, but frozen lamb, a bad base. The defendant's crew did not supply the information necessary to enable a land-oriented fire fighting unit to deal effectively with the unusual conditions aboard ship and that duty became triggered by the fire. In *Gilchrist v. Mitsui Sempaku, K.K.*, 405 F.2d 763, 767 (3d Cir. 1968), *cert. denied sub nom. Jarka Corp. v. Mitsui Sempaku, K.K.*, 394 U.S. 920, 89 S.Ct. 1195, 22 L.Ed.2d 453 (1969), we found no error in a trial judge's instructions that if the stevedore's breach of warranty "brought into play" the negligence which caused the shipowner's liability, then the stevedore would be required to indemnify. As we phrased it: "Whatever condition or situation was the basis for liability of the shipowner to the plaintiff-longshoreman, the condition was brought into play or the situation was brought about by the stevedoring company." *See also Crumady v. Joachim Hendrick Fisser*, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413 (1959).

■ The "situation" here was the arrival of the plaintiff aboard ship and his unit's activities in containing a potentially dangerous fire, not simply the slipping of the ladder. In the district court's view, the positioning of the ladder on an unstable surface and the failure of a ship's crew to warn were unusual and unforeseen circumstances from the stevedore's standpoint. The precise way in which the plaintiff fell was, perhaps, not clearly foreseeable. Nonetheless, the possibility that a fireman would fall because of unfamiliarity with conditions on the ship cannot be said to be so unusual as to sustain the district court's ruling that there was no proximate causation as a matter of law.

■ The stevedore cites Restatement (Second) of Torts § 435(2): "The actor's conduct may be held not to be a legal cause of harm to another where after the event and looking back from the harm to the actor's negligent conduct, it appears to the court highly extraordinary that it should have brought about the harm." The citation does not aid the stevedore because it cannot be said to be highly extraordinary that a fireman fell and was injured while

---

**2.** Section 330 provides: "In awarding damages, compensation is given for only those injuries that the defendant had reason to foresee as a probable result of his breach when the contract was made. If the injury is one that follows the breach in the usual course of events, there is sufficient reason for the defendant to foresee it; otherwise, it must be shown specifically that the defendant had reason to know the facts and to foresee the injury."

extinguishing a fire caused initially by a party's negligence. Moreover, the slipping of the ladder occurred in an area where the stevedore had been discharging cargo and thus, to some extent, had created a condition more hazardous than that which had existed before it began work. In hindsight, it does not appear highly unusual that a ladder would slip because firemen under pressure to extinguish a fire were not as deliberate in avoiding danger as would be the case under less demanding circumstances. In such a situation, a certain amount of risk-taking must be anticipated and should not be considered an insulating circumstance breaking the chain of legal causation.

 Nor are we persuaded by the stevedore's argument that it should be shielded by the shipowner's failure to warn as a superseding act. The stevedore's employees were also on the scene when the firemen arrived and were equally able to give warning. Stevedore is in no position to complain that conduct of which it was equally culpable was unforeseeable as to the shipowner.

 In *Dziedzina v. Dolphin Tanker Corp.*, 361 F.2d 120, 122–23 & n.2 (3d Cir. 1966), we found proper a portion of a requested charge which stated that failure of a stevedore to perform in a careful and workmanlike manner which "substantially contributed to the injury" would allow indemnification. In that case, an unseaworthiness condition was brought into play by the activity of the stevedore, and a breach of its warranty occurred. That same standard is applicable here.

For the proposition that legal causation was lacking, the stevedore and the trial court relied extensively upon *Reddick v. McAllister Lighterage Line, Inc.*, 258 F.2d 297 (2d Cir.), *cert. denied sub nom. McAllister Lighterage Line, Inc. v. John T. Clark & Son*, 358 U. S. 908, 79 S.Ct. 235, 3 L.Ed.2d 229 (1958). In that case, because of a stevedore's improper stowage, a longshoreman was required to climb atop a pile of wooden crates. One of the boards in a crate was weak and broke under the longshoreman's foot, causing serious injury. The court, by a divided vote, reversed the trial judge's finding of liability, the majority concluding the latent defect in the board was an intervening cause which broke the chain of causation. *Reddick,* however, may be distinguished on its facts. To the extent that its rationale may be understood to require foreseeability of the precise method in which an accident happened, we decline to apply it to the case under review. In our opinion, the appropriate standard is set out in *Gilchrist* and *Dziedzina, supra.*

We believe the issue of causation in this case was not for resolution by the court but by the jury, and its finding should not have been set aside.

 The shipowner moved for a new trial as to Philadelphia on the ground that the plaintiff's negligence should be imputed to the city,[3] which should then be liable for contribution as a joint tortfeasor. We agree with the district court's conclusion that the city was not liable for contribution.

 Plaintiff, as an employee of the city, was covered by the state's Workmen's Compensation Act, Pa.Stat.Ann. tit. 77, §§ 1–1602. He could not sue the city in tort, but was restricted to the statutory benefits which he received. Since the event occurred aboard a ship in navigable waters, maritime law applies, including its doctrine of contribution among joint tortfeasors. There was no contractual relationship giving rise to a right of indemnity between the city and the shipowner as there was with the stevedore. Therefore, the right of the shipowner to contribution from the city must rest upon establishment of the municipality as a joint tortfeasor. In *Cooper Stevedoring v. Fritz Kopke, Inc.,* 417 U.S. 106, 94 S.Ct. 2174, 40 L.Ed.2d 694 (1974), the Supreme Court recognized a right of contri-

---

**3.** That proposition is generally true if the employer owes a duty of indemnification to the shipowner, *King v. Deutsche Dampfs–Ges,* 523 F.2d 1042 (2d Cir. 1975), but not if there is no contractual relationship between employer and shipowner, *Nye v. A/S D/S Svendborg,* 501 F.2d 376 (2d Cir. 1974).

bution between joint tortfeasors in maritime law. That decision, however, did not overrule *Atlantic Coast Line Railroad v. Erie Lackawanna Railroad,* 406 U.S. 340, 92 S.Ct. 1550, 32 L.Ed.2d 110 (1972), and *Halcyon Lines v. Haenn Ship Ceiling & Refitting Corp.,* 342 U.S. 282, 72 S.Ct. 277, 96 L.Ed. 318 (1952), where the Court refused to impose liability for contribution on longshoremen's employers whose conduct had contributed to their employees' injuries. The plaintiffs in both cases received benefits under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901–950, and were barred from pursuing any other remedy against their employers. In *Cooper Stevedoring Co., supra,* the Court sharply distinguished the situation where an injured party is free to proceed directly against both of the parties who had caused his injuries from that where he is prevented from suing one of those alleged to be at fault, his employer, because of the Longshoremen's and Harbor Workers' Compensation Act. In the former situation, contribution is allowed; in the latter, it is not. *See also Dobbins v. Crain Brothers,* 567 F.2d 559 (3d Cir., 1977).

The same reasoning which barred contribution in *Halcyon Lines* and *Atlantic Coast Line* is applicable to the case *sub judice.* Under the Pennsylvania Workmen's Compensation Act, an employee may not proceed directly against his employer. The trade offs of limited damages, liability without fault, and the elimination of contributory negligence and assumption of risk defenses are present here as in the Longshoremen's and Harbor Workers' Compensation Act. We agree with the district court that in this context there appears to be no basis for distinguishing between an employer's federal and state statutory immunity from suit. Accordingly, since the plaintiff was unable to proceed directly against his employer, it may not be held liable for contribution as a joint tortfeasor under the rule established in *Halcyon Lines.*

■ The shipowner urges us to follow the Pennsylvania case of *Maio v. Fahs,* 339 Pa. 180, 14 A.2d 105 (1940), which allows

contribution to the extent of workmen's compensation benefits payable from an employer who has been found jointly negligent. We must reject that contention since in a maritime case the right of contribution is governed by federal, not state law. Consequently, the district court properly entered judgment in favor of the City of Philadelphia.

The judgment n. o. v. in favor of Lavino Shipping Company will be vacated, and the judgment in favor of Taiyo Gyogyo and against Lavino Shipping Company for indemnity will be reinstated. In all other respects, the judgment of the district court will be affirmed.