The ORION INSURANCE COMPANY, LIMITED

v.

UNITED TECHNOLOGIES CORPORATION and Amtel, Inc.

Richard GEHRING, as Executor and Personal Representative of the Estate of Herman W. Gehring, Deceased

v.

UNITED TECHNOLOGIES CORPORATION and Amtel, Inc.

v.

CARSON HELICOPTERS, INC.

Civ. A. Nos. 78–1779, 78–2972.

United States District Court, E. D. Pennsylvania.

Aug. 23, 1979.

**608**

Daniel Mungall, Jr., Philadelphia, Pa., for Orion and Gehring.

J. Grant McCabe, III, Philadelphia, Pa., for United Technologies.

John B. Martin, J. Bruce McKissock, Philadelphia, Pa., for Amtel.

## MEMORANDUM

HUYETT, District Judge.

By an Order dated July 31, 1979, we granted third-party defendant Carson Helicopter, Inc.'s motion to dismiss, which we treated as a motion for summary judgment. This memorandum states the reasons for that Order.

On March 21, 1979, we permitted defendant United Technologies Corporation ("UTC") to join Carson Helicopters, Inc. ("Carson") as a third-party defendant. *Gehring v. United Technologies Corp.*, C.A. No. 78–2972 (E.D.Pa., March 21, 1979). Carson has now moved, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the third-party complaint filed against it.

Plaintiff in this action is Richard Gehring, as Executor and Personal Representative of Herman W. Gehring ("Gehring") on behalf of Gehring's widow, children and parents. Carson was Gehring's employer at the time he was killed, in a helicopter accident that occurred in the harbor of Jeddah, Saudi Arabia. Defendants UTC and Amtel, Inc. allegedly designed, manufactured and sold to Carson the helicopter that Gehring was piloting at the time of the accident that

resulted in his death. In its third-party complaint, UTC alleges that Carson's negligence was responsible for Gehring's death and that in the event UTC is found liable, Carson is liable to UTC for contribution. Plaintiff bases jurisdiction on 28 U.S.C. §§ 1331(a), 1332, 1333, and 46 U.S.C. § 761.

In support of its motion to dismiss the third-party complaint, Carson states that UTC's claim is barred by Section 303(b) of the Pennsylvania Workmen's Compensation Act *as amended,* 77 P.S. § 481(b). That section provides that:

> In the event injury or death to an employee is caused by a third party, then such employe, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to receive damages by reason thereof, may bring their action at law against such third party, but the employer, his insurance carrier, their servants and agents, employes, representatives acting on their behalf or at their request shall not be liable to a third party for damages, contribution, or indemnity in any action at law, or otherwise, unless liability for such damages, contributions or indemnity shall be expressly provided for in a written contract entered into by the party alleged to be liable prior to the date of the occurrence which gave rise to the action.

The Pennsylvania Workmen's Compensation Act provides by its own terms for its extraterritorial effect in certain circumstances.[1] One of the instances in which an extraterritorial application of the Act is provided for is where the employee "is working under a contract of hire made in [Pennsylvania] for employment outside the United States and Canada." 77 P.S. § 411.2(a)(4). Carson has submitted affidavits that establish that: Gehring was a Pennsylvania resident at the time he contracted with Carson; his employment contract for the work to be performed at Jed-

---

1. It is clear that the scope of State workmen's compensation acts is not constitutionally limited to accidents that occur within the enacting State. *See Cardillo v. Liberty Mutual Insur-* ance *Co.*, 330 U.S. 469, 67 S.Ct. 801, 91 L.Ed. 1028 (1947); *Alaska Packers Ass'n v. Industrial Accident Comm'n*, 294 U.S. 532, 540–41, 55 S.Ct. 518, 79 L.Ed. 1044 (1935).

dah was entered into in Pennsylvania; following Gehring's death, Carson's workmen's compensation insurer filed with the Pennsylvania Department of Labor and Industry a Notice of Compensation Payable, and; since September 9, 1976, the insurance carrier has made regular payments to Gehring's widow pursuant to the Act.[2] Affidavits of James M. Coxe, Richard A. Carson, and Annelise Gehring.

These affidavits establish the preconditions for the provision of the Act protecting Carson from third-party suits.[3] UTC argues, however, that application of the provisions of the Pennsylvania Act in this case would contravene "the well-established maritime rule allowing contribution between joint tortfeasors." *Cooper Stevedoring Co. v. Fritz Kopke, Inc.,* 417 U.S. 106, 113, 94 S.Ct. 2174, 2178, 40 L.Ed.2d 694 (1974). We do not believe, however, that contribution is available on the facts of this case. This conclusion is consistent, we believe, with *Pastore v. Taiyo Gyogyo, K.K.,* 571 F.2d 777 (3d Cir. 1978). In that case a Philadelphia fireman was injured while fighting a fire aboard a ship docked in navigable waters in Philadelphia. The shipowner contended that it was entitled to contribution from Philadelphia, the fireman's employer. The language of the Third Circuit in that case is equally instructive here:

> Plaintiff, as an employee of the city, was covered by the state's Workmen's Compensation Act, Pa.Stat.Ann. tit. 77, §§ 1–1602. He could not sue the city in tort, but was restricted to the statutory benefits which he received. Since the event occurred aboard a ship in navigable waters, maritime law applies, including its doctrine of contribution among joint tortfeasors. There was no contractual relationship giving rise to a right of indemnity between the city and the shipowner as there was with the stevedore. Therefore, the right of the shipowner to

contribution from the city must rest upon establishment of the municipality as a joint tortfeasor. In *Cooper Stevedoring v. Fritz Kopke, Inc.,* 417 U.S. 106, 94 S.Ct. 2174, 40 L.Ed.2d 694 (1974), the Supreme Court recognized a right of contribution between joint tortfeasors in maritime law. That decision, however, did not overrule *Atlantic Coast Line Railroad v. Erie Lackawanna Railroad,* 406 U.S. 340, 92 S.Ct. 1550, 32 L.Ed.2d 110 (1972), and *Halcyon Lines v. Haenn Ship Ceiling & Refitting Corp.,* 342 U.S. 282, 72 S.Ct. 277, 96 L.Ed. 318 (1952), where the Court refused to impose liability for contribution on longshoremen's employers whose conduct had contributed to their employees' injuries. The plaintiffs in both cases received benefits under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901–950, and were barred from pursuing any other remedy against their employers. In *Cooper Stevedoring Co., supra,* the Court sharply distinguished the situation where an injured party is free to proceed directly against both of the parties who had caused his injuries from that where he is prevented from suing one of those alleged to be at fault, his employer, because of the Longshoremen's and Harbor Workers' Compensation Act. In the former situation, contribution is allowed; in the latter, it is not. *See also Dobbins v. Crain Brothers,* 567 F.2d 559 (3d Cir., 1977).

The same reasoning which barred contribution in *Halcyon Lines* and *Atlantic Coast Line* is applicable to the case *sub judice.* Under the Pennsylvania Workmen's Compensation Act, an employee may not proceed directly against his employer. The trade offs of limited damages, liability without fault, and the elimination of contributory negligence and assumption of risk defenses are present here as in the Longshoremen's and Har-

---

2. UTC has not, by affidavit or otherwise, contested the averments contained in the affidavits.

3. For a discussion of the policy underlying the protection of employers under a statutory obligation to provide compensation to employees from third-party suits, *see Adamik v. Pullman Standard,* 439 F.Supp. 784 (W.D.Pa.1977).

bor Workers' Compensation Act. We agree with the district court that in this context there appears to be no basis for distinguishing between an employer's federal and state statutory immunity from suit. Accordingly, since the plaintiff was unable to proceed directly against his employer, it may not be held liable for contribution as a joint tortfeasor under the rule established in *Halcyon Lines.*

*Id.* at 783–84.

■ UTC has conceded that "[t]here is no question as to the applicability of the Act as between the contracting parties, i. e., Carson and Gehring." Memorandum of United Technologies Corporation in Reply to the Supplemental Memorandum of Carson Helicopters, Inc. in Support of the Motion to Dismiss the Third Party Complaint at 2. We agree. Unlike UTC, however, we believe that it therefore follows that *Pastore, supra,* controls this case. As in that case, "since the plaintiff [is] unable to proceed directly against [the] employer, it may not be held liable for contribution as a joint tortfeasor . . . ." 571 F.2d at 784.

UTC argues, however, that this case is distinguishable from *Pastore* since Gehring, unlike the fireman in *Pastore,* was engaged in maritime employment and since this case occurred outside the jurisdiction of Pennsylvania. We do not believe, however, that these factual differences remove this case from the holding of *Pastore.* *Pastore* turned not on the nature of the plaintiff's employment, but on the fact that he could not proceed directly against his employer. Furthermore, we do not believe that the result we reach in this case is precluded by the holding in *Southern Pacific Co. v. Jensen,* 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086

(1917).[4] The accident that gave rise to that case, like the accident in *Pastore,* occurred aboard a ship docked within the navigable waters of the United States. If the employer's immunity from third-party suit in *Pastore* was consistent with *Jensen,* we do not believe that a contrary result is required here.[5] The third-party complaint against Carson may therefore not be maintained.[6] This result, however, in no way precludes UTC from attempting to prove at trial that Carson's negligence was the proximate and legal cause of Gehring's death. *Albrecht v. Pneuco Machinery Co.,* 448 F.Supp. 851, 854 n.2 (E.D.Pa.1978).

---

**4.** The Supreme Court has noted that *Jensen* has been confined to its facts, "*viz.,* to suits relating to the relationship of vessels, plying the high seas and our navigable waters, and to their crews." *Askew v. American Waterways Operators, Inc.,* 411 U.S. 325, 344, 93 S.Ct. 1590, 1601, 36 L.Ed.2d 280 (1973).

**5.** The opinion in *Pastore* does not discuss the effect, if any, of *Jensen* on that case. We believe, however, that *Pastore,* which was de-

cided under maritime law, 571 F.2d at 783, can be read as deciding *sub silentio* that a state immunity from suit, which prevents an employer from being held liable for contribution as a joint tortfeasor, does not contravene *Jensen.*

**6.** Because the affidavits submitted by Carson have been considered, Carson's motion shall be treated as one for summary judgment. *See* Fed.R.Civ.P. 12(b).