David J. CARCAISE, et al., Plaintiffs,

v.

CEMEX, INC., Defendant/Third Party Plaintiff,

v.

Industrial Contracting and Erecting, Inc., Third Party Defendant.

Cemex, Inc., Plaintiff,

v.

Industrial Contracting and Erecting, Inc., Defendant/Third Party Plaintiff,

Minserco, Inc., Third Party Defendant.

Civil Action Nos. 01–859, 02–1240.

United States District Court, W.D. Pennsylvania.

Aug. 23, 2002.

sought punitive damages. Those claims will proceed.

Mark J. Homyak, Homyak Law Firm, Pittsburgh, PA, for plaintiff.

Jeffrey M. Olszewski, Tighe, Evan, Ehrman, Schenck & Paras, Pittsburgh, PA, for defendant.

Francis X. McTiernan, Jr., Wayman, Irvin & McAuley, Mark Reilly, Doyle & McCrory, Pittsburgh, PA, for third-party defendant.

## ORDER

CAIAZZA, Chief United States Magistrate Judge.

■ For the reasons stated below, Industrial Contracting and Erecting, Inc.'s Motion to Consolidate the above-captioned cases (*see* Doc. 18 in Civil Action No. 01–859 *and* Doc. 4 in Civil Action No. 02–1240) will be denied,[1] as will its Request for a Hearing regarding the same (*see* Doc. 24 in Civil Action No. 01–859).

David J. Carcaise ("Mr.Carcaise") and his wife (collectively "the Carcaises") filed the first of the above-referenced cases on May 15, 2001, asserting subject matter jurisdiction based on diversity of citizenship. *See generally* Compl. (Doc. 1 in Civil Action No. 01–859). In said action (hereinafter "*Carcaise* "), the Plaintiffs assert claims against Cemex, Inc. ("Cemex") based on harms incurred when a "dragline" allegedly owned by Cemex "suddenly fell down an approximately 70–foot embankment." *See id.* at ¶¶ 9–10. The dragline was "an extremely large machine used to strip tons of earth and coal in . . . strip mining," and Mr. Carcaise was "working within the cab" of the dragline when it fell. *See generally id.* at ¶¶ 8–10.

At the time of the accident, Mr. Carcaise was "engaged in the course of his duties" as an employee of Minserco, Inc. ("Minserco" or "the Employer"). *See generally id.* ¶ 7. Minserco has not been, nor could it be, named as a defendant in *Carcaise.* This is so because Mr. Carcaise's injuries occurred in Pennsylvania, and the Commonwealth's Workers' Compensation Act pro-

---

1. Pursuant to the Referral Orders entered by the District Court (*see* Doc. 2 in Civil Action No. 01–859 *and* Doc. 2 in Civil Action No. 02–1240), this magistrate judge has the authority to rule on the request to consolidate as a non-dispositive motion. *See Trafalgar Power, Inc. v. Aetna Life Ins. Co.,* 131 F.Supp.2d 341, 343 (N.D.N.Y.2001) (motion for consolidation is one for "non-dispositive relief"); *cf. also Bergman v. City of Atlantic City,* 860 F.2d 560, 563 (3d Cir.1988) (leaving undisturbed on appeal magistrate judge's order "consolidat[ing] actions] for all purposes of discovery and trial") (citation omitted).

vides his exclusive remedy against the Employer. *See* Compl. at ¶¶ 7, 10 (accident occurred in "Lawrence County, Pennsylvania"); *see also Murray v. Gencorp, Inc.,* 979 F.Supp. 1045, 1049 (E.D.Pa.1997) (Pennsylvania's Workers' Compensation Act "is applicable to all injuries occurring within th[e] Commonwealth") (citation and internal quotations omitted); *Warnick v. Harsco Corp.,* 1999 WL 695591, *1 (E.D.Pa. Sept.9, 1999) ("The Pennsylvania worker's compensation scheme provides the exclusive remedy for an employee, against an employer, when the employee is injured in the scope of [his] employment.") (*citing* 77 Pa.Stat. § 481(a)).

On September 24, 2001, and with leave of court, Cemex filed a Third Party Complaint against Industrial Contracting and Erecting, Inc. ("I.C.E."). The Third Party Complaint alleges that, pursuant to a contract with Cemex, I.C.E. "disassemble[d], transport[ed] and reassemble[d] the dragline in question from McHenry, Kentucky" to the jobsite in Pennsylvania. *See generally* 3d Party Compl. (Doc. 11 in Civil Action No. 01–859) at ¶ 12. Cemex alleges that I.C.E. did so "in a careless, reckless and negligent manner [that] may have caused and/or contributed to the ... dragline accident." *See generally id.* at ¶ 22. Based on these and other allegations Cemex avers that, if it is liable to the Carcaises, I.C.E. is liable to Cemex "under theories of indemnity and/or contribution...." *See generally id.* at ¶ 27.

On September 21, 2001, the same day Cemex moved in *Carcaise* to join I.C.E. as a third party defendant, Cemex caused the Prothonotary for the Court of Common Pleas of Lawrence County, Pennsylvania to issue upon I.C.E. a Writ of Summons. *See* Writ of Summons (attached as Ex. B to Notice of Removal in Civil Action No. 02–1240). Nine months later, on June 21, 2002, Cemex filed a Complaint against

I.C.E. in the same Common Pleas Court. *See* Compl. (attached as Ex. A to Notice of Removal in Civil Action No. 02–1240). Shortly thereafter, I.C.E. removed the case to this court on the basis of diversity jurisdiction. *See generally* Notice of Removal in Civil Action No. 02–1240 at ¶¶ 5–6.

In the removed action, docketed at Civil Action No. 02–1240 (and at times hereinafter referred to as *"Cemex"*), Cemex asserts claims against I.C.E. based on the same "incident" in which Mr. Carcaise was injured, *i.e.,* when "the dragline slid down" the seventy-foot embankment. *See generally* Compl. in Civil Action No. 02–1240 at ¶ 10. Cemex states claims against I.C.E. for negligence and breach of contract, and it alleges "damage to its property and business in excess of $12,000,000.00...." *See id.*

On July 19, 2002, I.C.E. filed a Third-Party Complaint in *Cemex,* joining Minserco as the Third Party Defendant. *See* 3d Party Compl. (Doc. 3 in Civil Action No. 02–1240). Among other things, Cemex alleges that Minserco's "operation of the dragline was performed in a careless, reckless and negligent manner which caused and/or contributed to the occurrence of the dragline accident." *See generally id.* at ¶ 17.

Finally, on July 25, 2002, I.C.E. filed duplicate Motions for Consolidation in *Carcaise* and *Cemex.* *See* Doc. 18 in Civil Action No. 01–859; Doc. 4 in Civil Action No. 02–1240. I.C.E. urges that consolidation is appropriate under Federal Rule of Civil Procedure 42(a), stating:

> The above-captioned ... actions clearly involve common questions of law and fact.... [O]ne event—the dragline accident of September 24, 1999—gave rise to both actions.... The accident allegedly resulted in the injuries and/or damages claimed by both Plaintiffs. The

common questions of law and fact all relate to the causation of the accident and the necessary apportionment of liability among potential joint tortfeasors, if applicable.... [E]ach case will involve the same witnesses and evidence.... Further Cemex and [I.C.E.] ha[ve] asserted several common defenses in these actions, including contributory and/or comparative negligence, misuse, and assumption of known risk.

*See* Br. in Supp. of Mot. for Consolidation (Doc. 7 in Civil Action No. 01–859) at un-numbered p. 4. I.C.E. also asserts that "no prejudice to any party Plaintiff will result from a joint trial of these actions," and counsel posits that "it is highly unlikely that consolidation ... would result in an unreasonably complicated trial or jury confusion from multiple ... theories of liability...." *See id.* at un-numbered p. 6–7.

The court completely disagrees with I.C.E.'s assertions regarding prejudice, trial complication, and jury confusion. As an initial matter, both the Carcaises and the Third–Party Defendant in Civil Action No. 02–1240, Minserco, have made compelling arguments that they will be unduly prejudiced if the cases are consolidated. As highlighted by the Carcaises' counsel, the litigants in *Carcaise* have already engaged in substantial discovery in the year-plus that the case has been pending. *See generally* Pls.' Br. in Opp'n to Mot. for Consolidation (Doc. 21 in Civil Action No. 01–859) at 4. Without recapitulating each of counsel's assertions, it suffices to say that the Carcaises have identified substantial bases for concern regarding undue hardship and delay. *See, e.g., id.* at 7 (in *Carcaise*, "thousands of ... documents have been exchanged[,] ... nine deposi-

tions have ... taken place," and a discovery deadline of February 20, 2003 has been established (after multiple extensions), while in *Cemex* "no discovery has occurred"). Minserco echoes similar concerns regarding prejudice. *See* Resp. in Opp'n to Mot. to Consolidate (Doc. 8 in Civil Action No. 02–1240) at ¶ 10 (asserting that, of ten depositions already taken in *Carcaise*, counsel attended only four, and at none of them was Minserco a party of record).

Much more important, however, are concerns regarding the results of consolidating *Carcaise* with an action in which the alleged negligence of Minserco, Mr. Carcaise's employer at the time of the accident, is at issue. *See* discussion *supra* (noting joinder of Minserco in *Cemex* as Third Party Defendant). As noted above, Pennsylvania's Workers' Compensation Act provides Mr. Carcaise's exclusive remedy against Minserco. *See* discussion *supra*. Indeed, said Employer enjoys statutory immunity not only from direct claims by the Carcaises, but also from claims of derivative liability by Cemex and/or I.C.E. *See* Pa.Stat. § 481(b) (hereinafter "Section 481(b)") ("[i]n the event injury or death to an employe is caused by a third party, then such employe ... may bring [his] action at law against such third party, *but the employer ... shall not be liable to a third party for damages, contribution, or indemnity in any action at law* ") (emphasis added).[2]

 Not only is Minserco immune from direct and/or derivative liability in *Carcaise*, it cannot even be joined for the purposes of apportioning its alleged liabili-

---

2. Section 481(b) specifies a sole exception to this rule, namely where contribution or indemnity is "expressly provided for in a written contract entered into by the party alleged to be liable prior to the date of the occurrence which [gives] rise to the action." *See id.* Here, neither Cemex nor I.C.E. provides any indication that the Employer owes a contractual duty of contribution or indemnity.

ty. The Pennsylvania Supreme Court in *Heckendorn v. Consolidated Rail Corp.,* 502 Pa. 101, 465 A.2d 609 (1983) held precisely the same, and this remains the law of Pennsylvania. *See Heckendorn,* 465 A.2d at 610 (expressly rejecting notion that "statutorily immune" employer "may nonetheless be joined by [a] third party [tortfeasor] for the purpose of apportioning the employer's negligence with the negligence of the third party"); *Derro v. Lisle Corp.,* 1992 WL 20322, *2 (E.D.Pa. Jan.31, 1992) (an "employer may not be joined as an additional defendant, even for the purpose of apportioning liability") (*citing Heckendorn* ).[3]

If this court were to consolidate the two actions in question, the consolidation would have the practical effect of joining Minserco into *Carcaise* for the purpose, or with the result, of apportioning liability. Indeed, this is one of the very bases upon which I.C.E. seeks consolidation. *See* discussion *supra* (stating that "common questions of law and fact" exist regarding "the necessary apportionment of liability among potential joint tortfeasors"); *see also id.* ("Cemex and [I.C.E.] ha[ve] asserted several common defenses in these actions, including *contributory and/or comparative negligence*") (emphasis added). In this magistrate judge's view, granting I.C.E.'s request for consolidation would be to create an end-run around Pennsylvania law prohibiting the joinder of Minserco in *Carcaise.*

■ Even assuming the requested consolidation would not run afoul of *Hecken-*

dorn (a proposition neither asserted nor shown by the movant), the court has grave concerns regarding the likely trial complications and jury confusion that would result from the same. For in *Carcaise,* the fact-finder may not consider the alleged comparative negligence of the Employer in apportioning liability between the potential tortfeasors. On the other hand, Pennsylvania law provides no indication that Minserco cannot be found comparatively negligent in *Cemex* regarding the alleged property and other damages suffered as a result of the dragline incident. If there is some way that these competing standards can be accounted for in a single trial and effectively explained to a jury, I.C.E. has failed to show the same.

To further complicate matters, numerous federal courts have held that, even though an employer cannot be joined for the purposes of asserting or apportioning liability, non-employer defendants may introduce evidence of the employer's alleged negligence in an effort to show it was the sole legal cause of the plaintiff's injuries. *See, e.g., Kern v. Nissan Indus. Equip. Co.,* 801 F.Supp. 1438, 1445 (M.D.Pa.1992) ("statutory immunity of [an] employer does not *per se* preclude admission of employer or co-worker negligence in a suit against a third party" because defendant may "argue that [an immune party's] actions [were] wholly responsible for the plaintiff's injuries") (citations omitted); *Derro,* 1992 WL 20322 at *6 ("Even though § 481(b) prohibits a third party, when sued by an employee, from joining

---

**3.** In *Heckendorn,* the Supreme Court rejected the notion that Pennsylvania's Comparative Negligence Act, 42 Pa. Cons.Stat. § 7102, "reflect[ed] a legislative intent to permit joinder of an employer as an additional defendant for the purpose of apportioning fault." *See id.* at 611–12. The Court found precisely the opposite, highlighting that the Comparative Negligence Act permits an apportionment between

"*all defendants against whom recovery is allowed.*" *See id.* at 612 (*quoting* 42 Pa. Cons. Stat. § 7102, emphasis in original). Because the Workers' Compensation Act expressly *disallows* recovery from the employer, the Court found that the two statutes could "be read in full and complete harmony." *See id.* at 107 (citations and internal quotations omitted).

an employer in the action, the third party can still defend against the employee's suit by proving at trial that the employer's actions, rather than those of the third party, were the proximate and legal cause of the injury.") (citation omitted); *Orion Ins. Co., Ltd. v. United Tech. Corp.*, 475 F.Supp. 607, 610 (E.D.Pa.1979) (same); *Albrecht v. Pneuco Mach. Co.*, 448 F.Supp. 851, 854 n. 2 (E.D.Pa.1978) (same). This approach enjoys support under Pennsylvania state court precedent, and the Court of Appeals for the Third Circuit has confirmed (if not endorsed) this conclusion. *See Tsarnas v. Jones & Laughlin Steel Corp.*, 262 Pa.Super. 417, 396 A.2d 1241, 1244–45 (1978) ("[N]othing in Section [481](b) precludes a defendant from defending at trial on the theory that the conduct of the plaintiff's employer was the legal cause of the injury. In other words, if there is no fault on the defendant's part, it will not be held liable.") (citations omitted), *aff'd*, 488 Pa. 513, 412 A.2d 1094 (1980); *Van Buskirk v. Carey Canadian Mines, Ltd.*, 760 F.2d 481, 493 n. 8 (3d Cir.1985) (addressing Superior Court's holding that, "even though the Workmen's Compensation Act limited the amount of recovery available from the employer, it did not preclude any argument that the employer was in fact solely responsible") (citation omitted).

Presuming Cemex and/or I.C.E. will be permitted to introduce evidence of Minserco's alleged negligence in attempting to show it was the sole legal cause of Mr. Carcaise's injuries,[4] the potential for undue complication and jury confusion multiplies exponentially. On the one hand, the jury would be instructed it may consider evidence of the Employer's negligence to determine whether it was the sole, proximate cause of Mr. Carcaise's injuries. On the other hand, the jury would have to understand that it may *not* consider such evidence within the context of comparative fault, nor would it be able to apportion liability based on the same. Superimposed upon these considerations would be an instruction that the jury can and should determine whether Minserco was comparatively negligent within the context of Cemex's property damage and related claims, and that apportionment of liability *is* appropriate within this context.

The aforementioned scenario presents far too great a potential for jury confusion and trial complication for this magistrate judge to endorse. In addition, opening the door to the jury's improper consideration of the Employer's alleged negligence within the contexts of comparative fault and apportionment of liability would improperly tread on the well-established principles in *Heckendorn*.[5] For these reasons, as

---

4. To be sure, there is at least some room for the Plaintiffs to argue that evidence of the Employer's alleged negligence has no place in *Carcaise*. *See, e.g., Leonard v. Harris Corp.*, 290 Pa.Super. 370, 434 A.2d 798, 802 (1981) ("Prior to [the enactment of Section 481(b)], the third party defendant was able to join the employer and present evidence to a jury concerning the employer's negligence. This evidence might exonerate the third party from all liability by proving the employer's negligence alone had caused the injury or it might result in a determination that the employer and third party were jointly liable. However, the enactment of Section [481](b) has foreclosed the adjudication of the liability of the employer.") (citations omitted). This magistrate judge expressly declines to state an opinion on the matter, however, until it is properly made the subject of an *in limine* or other appropriate motion.

5. Under the Comparative Negligence Act, the trier of fact "apportion[s] liability on a percentage basis *among those defendants on the record against whom recovery is allowed.*" *See Kelly v. Carborundum Co.*, 307 Pa.Super. 361, 453 A.2d 624, 627 (1982) (emphasis added, citation and internal quotations omitted), *aff'd*, 504 Pa. 238, 470 A.2d 969 (1984). Because the Workers' Compensation Act disallows recovery from the employer, the employ-

well as the others stated above, I.C.E.'s Motion to Consolidate will be denied.

In denying the Motion to Consolidate, the court is mindful of "the risk of inconsistent adjudications of common factual and legal issues." *See generally Carpenter v. GAF Corp.*, 1994 WL 47781, *1 (6th Cir. Feb.15, 1994) (identifying same as one factor to consider in deciding whether to consolidate) (citation and internal quotations omitted). Relatedly, this court cannot rule out the possibility that findings on liability in the first-tried action may have preclusive effect in the second. *See generally Nelson v. Heslin*, 806 A.2d 873, 875 (Pa.Super.2002) ("[t]he doctrine of collateral estoppel, . . . sometimes referred to as issue preclusion, operates to prevent questions of law or issues of fact which have once been litigated and adjudicated finally . . . from being relitigated in a subsequent suit") (citations omitted).[6]

Nevertheless, the court concludes the prejudice, trial complication, and jury confusion that would result from the requested consolidation easily outweighs the factors favoring the same. In addition, the court remains unconvinced that it properly may consolidate the two cases without running afoul of the well-established principles in *Heckendorn.* The movant has failed to show otherwise, and this reason alone warrants a denial of the requested consolidation.

For all of the reasons stated above, Industrial Contracting and Erecting, Inc.'s Motion for Consolidation (*see* Doc. 18 in Civil Action No. 01–859 *and* Doc. 4 in Civil Action No. 02–1240) is hereby DENIED, as is its Request for a Hearing regarding the same (*see* Doc. 24 in Civil Action No. 01–859).[7]

IT IS SO ORDERED.

er's comparative liability is subtracted from the equation, thereby potentially requiring third-party tortfeasor(s) to "pay more than [their] proportionate part of the [employee's] loss. . . ." *See Heckendorn v. Consolidated Rail Corp.*, 293 Pa.Super. 474, 481, 439 A.2d 674 (1981) (affirming opinion referenced above). If this conclusion seems counter-intuitive to those familiar with the law, it would be even more so for lay persons on the jury. *Cf., e.g., Derro*, 1992 WL 20322 at *6 ("[a]lthough the philosophy of comparative negligence would [direct the] inclusion of an employer's negligence in calculating the amounts to be paid by each tortfeasor," Section 481(b) "forbids such an interpretation, *however logical it may seem* ") (citation omitted, emphasis added). The potential for jury confusion is only exacerbated, moreover, by Minserco's potential comparative liability regarding Cemex's property and related damages.

6. In raising the issue of collateral estoppel, this magistrate judge does not mean to suggest that Minserco can or should defend allegations in *Carcaise* that its purported negligence was the sole legal cause of the Plaintiffs' injuries. As the court has made abundantly clear, Pennsylvania law prohibits the joinder of Minserco in that case. *See* discussion *supra; see also generally Derro*, 1992 WL 20322 at *5 ("One of the purposes behind the enactment of employer immunity was to prevent the uncertain drain . . . caused by employer contribution costs and *legal defense expenses* that had resulted from third-party actions in the past.") (citations and internal quotations omitted, emphasis added). Thus, even assuming Cemex and/or I.C.E. convinces a jury in *Carcaise* that Minserco's alleged negligence was the sole legal cause of the accident, such a finding could have no preclusive effect in *Cemex. See Nelson*, 2002 WL 1729796 at *3 (for collateral estoppel to apply, "[t]he party against whom [it] is asserted" must have had "a full and fair opportunity to litigate the issue in the prior action") (citations omitted).

7. Having already carefully weighed the factors both favoring and disfavoring the requested consolidation, the court sees no bene-

fit to conducting a hearing. In addition, this magistrate judge sees no justification for giving I.C.E. an additional opportunity to argue matters implicated by its own request for consolidation.